ARIZONA GROCERY CO. *v.* ATCHISON, TOPEKA & SANTA FE RAILWAY CO. ET AL.

No. 98. Argued December 8, 1931.—Decided January 4, 1932.

*Messrs. Frank L. Snell, Jr.,* and *R. C. Fulbright,* with whom *Mr. Samuel White* was on the brief, for petitioner.

374

*Mr. Burton Mason,* with whom *Messrs. L. H. Chalmers, Thomas G. Nairn, E. W. Camp, R. S. Outlaw,* and *J. E. Lyons* were on the brief, for respondents.

376

*Messrs. Daniel W. Knowlton* and *H. L. Underwood,* by special leave of Court, filed a brief on behalf of the Interstate Commerce Commission, as *amicus curiae.*

380

*Messrs. John E. Benton* and *Clyde S. Bailey,* by special leave of Court, filed briefs on behalf of the National Association of Railroad and Utilities Commissioners and the Arizona Corporation Commission, as *amici curiae.*

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This case turns upon the power of the Interstate Commerce Commission to award reparations with respect to shipments which moved under rates approved or prescribed by it.

The respondent carriers maintained a rate of $1.045 per hundred pounds for shipment of sugar from California points to Phoenix, Arizona. On complaint of petitioner and others, the Commission, after hearing, on June 22, 1921, found that the rate attacked had been, then was, and for the future would be, unreasonable to the extent that it exceeded 96.5 cents,[1] and ordered the establishment

---

[1] 62 I. C. C. 412,

of a rate not exceeding that figure. September 17, 1921, the carriers promulgated a rate of 96 cents, which they later voluntarily reduced to 86.5 cents. November 3, 1922, certain of the complainants in the earlier proceeding, other than petitioner, filed a new petition attacking the current rate. While this case was pending, the carriers, on January 10, 1924, again made a voluntary reduction to 84 cents. February 25, 1925, the Commission filed a report prescribing for the future a maximum reasonable rate of 71 cents, to that extent modifying its earlier order.[2] Reparation was found to be due shippers under the old rate, but none was awarded. February 8, 1927, the second case was reopened for further consideration, but the 71 cent rate was not disturbed. In a later proceeding, with which petitioner's and other claims for reparation were consolidated, the Commission found that the rates to Phoenix from and after July 1, 1922, had been unreasonable to the extent they had exceeded 73 cents from Northern California and 71 cents from Southern California; prescribed rates for the future from those origins to Phoenix and other Arizona destinations, and awarded petitioner and other shippers reparation in the amounts by which the rates paid (86.5 and 84 cents) exceeded those (73 and 71 cents) found to have been the reasonable rates during the period since July 1, 1922.[3]

The date of the first shipment made by petitioner on which reparation was awarded was February 21, 1923, and of the last February 5, 1925, so that all were made between the effective dates of the first and second orders above mentioned.

The respondents objected that they should not be required to pay reparations on shipments which moved under rates approved or prescribed by the Commission as reasonable. To this that body replied, "We reserve the right, upon a more comprehensive record, to modify our

---

[2] 95 I. C. C. 244.          [3] 140 I. C. C. 171.

previous findings, upon matters directly in issue before us as to which it clearly appears that our previous findings would not accord substantial justice under the laws which we administer. We have such a case here. For the first time the record before us is comprehensive in the evidence which it contains upon the reasonableness of the rates assailed. Upon this record we reach the conclusion that the rate prescribed in the first Phoenix case, during the period embraced in these complaints, was unreasonable and that a lower rate would have been reasonable during that period. If we are within our authority in finding that a lower rate would have been reasonable, then it must follow that shippers who paid the freight charges at the higher rate paid charges which were unreasonable, and are entitled to reparation. . . ."

The carriers having failed to pay the amount awarded, the petitioner sued therefor in the District Court, and recovered judgment. The Circuit Court of Appeals reversed, and entered judgment for respondents.[4] This Court granted certiorari. Whether, as the petitioner argues, the Commission correctly construed its authority, is to be determined by examination of the legislation defining its powers.

The exaction of unreasonable rates by a public carrier was forbidden by the common law. *Interstate Commerce Comm.* v. *Baltimore & Ohio R. Co.*, 145 U. S. 263, 275. The public policy which underlay this rule could, however, be vindicated only in an action brought by him who paid the excessive charge, to recover damages thus sustained. Rates, fares, and charges were fixed by the carrier, which took its chances that in an action by the shipper these might be adjudged unreasonable and reparation be awarded.

But we are here specially concerned with the Interstate Commerce Act of 1887 [5] and with some of the changes or

---

[4] 49 F. (2d) 563.    [5] Act of February 4, 1887, 24 Stat. 379.

supplements adopted since its original enactment. That Act did not take from the carriers their power to initiate rates—that is, the power in the first instance to fix rates, or to increase or to reduce them. *Skinner & Eddy Corp.* v. *United States,* 249 U. S. 557, 564; *Cincinnati, N. O. & T. P. R. Co.* v. *Interstate Commerce Comm.,* 162 U. S. 184, 197. In order to render rates definite and certain, and to prevent discrimination and other abuses, the statute required the filing and publishing of tariffs specifying the rates adopted by the carrier, and made these the *legal* rates, that is, those which must be charged to all shippers alike.[6] Any deviation from the published rate was declared a criminal offense, and also a civil wrong giving rise to an action for damages by the injured shipper.[7] Although the Act thus created a legal rate, it did not abrogate, but expressly affirmed, the common-law duty to charge no more than a reasonable rate, and left upon the carrier the burden of conforming its charges to that standard.[8] In other words, the legal rate was not made by the statute a lawful rate—it was lawful only if it was reasonable. Under § 6 the shipper was bound to pay the legal rate; but if he could show that it was unreasonable he might recover reparation.

The Act altered the common law by lodging in the Commission the power theretofore exercised by courts, of determining the reasonableness of a published rate.[9] If the finding on this question was against the carrier, reparation

---

[6] *Id.,* § 6. *Kansas City Southern Ry. Co.* v. *Carl,* 227 U. S. 639, 653; *Pennsylvania R. Co.* v. *International Coal Co.,* 230 U. S. 184, 197; *Louisville & N. R. Co.* v. *Maxwell,* 237 U. S. 94, 97; *Dayton C. & I. Co.* v. *Cincinnati, N. O. & T. P. Ry. Co.,* 239 U. S. 446, 450.

[7] *Id.,* §§ 8, 9, 10.

[8] *Id.,* § 1.

[9] *Id.,* § 13. *Texas & P. R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, 443; *Robinson* v. *Baltimore & O. R. Co.,* 222 U. S. 506; *Skinner & Eddy Corp.* v. *United States,* 249 U. S. 557, 562, and cases cited.

was to be awarded the shipper, and only the enforcement of the award was relegated to the courts. In passing upon the issue of fact the function of the Commission was judicial in character;[10] its action affected only the past, so far as any remedy of the shipper was concerned, and adjudged for the present merely that the rate was then unreasonable; no authority was granted to prescribe rates to be charged in the future. Indeed, after a finding that an existing rate was unreasonable, the carrier might put into effect a new and slightly different rate and compel the shipper to resort to a new proceeding to have this declared unreasonable.[11] Since the carrier had complete liberty of action in making the rate, it necessarily followed that upon a finding of unreasonableness, an award of reparation should be measured by the excess paid, subject only to statutory limitations of time.

Under the Act of 1887 the Commission was without power either to prescribe a given rate thereafter to be charged (*Interstate Commerce Comm.* v. *Cincinnati, N. O. & T. P. Ry. Co.,* 167 U. S. 479), or to set a maximum rate for the future (*Cincinnati, N. O. & T. P. Ry. Co.* v. *Interstate Commerce Comm., supra,* p. 196), for the reason that so to do wou..ı be to exercise a legislative function not delegated to that body by the statute.[12]

The Hepburn Act[13] and the Transportation Act[14] evince an enlarged and different policy on the part of

[10] *Interstate Commerce Comm.* v. *Cincinnati, N. O. & T. P. Ry. Co.,* 167 U. S. 479, 499–500; *Baer Bros. Co.* v. *Denver & R. G. R. Co.,* 233 U. S. 479, 486.

[11] See *Baer Bros. Co.* v. *Denver & R. G. R. Co., supra,* p. 487.

[12] Compare *Prentis* v. *Atlantic C. L. Co.,* 211 U. S. 210, 226; *Louisville & N. R. Co.* v. *Garrett,* 231 U. S. 298, 301; *Terminal Railroad Assn.* v. *United States,* 266 U. S. 17, 30; *Assigned Car Cases,* 274 U. S. 564, 582.

[13] § 4, 34 Stat. 589.

[14] §§ 418–421, 41 Stat. 484–488.

Congress. The first granted the Commission power to fix the maximum reasonable rate; the second extended its authority to the prescription of a named rate, or the maximum or minimum reasonable rate, or the maximum and minimum limits within which the carriers' published rate must come. When under this mandate the Commission declares a specific rate to be the reasonable and lawful rate for the future, it speaks as the legislature, and its pronouncement has the force of a statute.[15] This Court has repeatedly so held with respect to the fixing of specific rates by state commissions;[16] and in this respect there is no difference between authority delegated by state legislation and that conferred by Congressional action.

But it is suggested that the mere setting of limits by Commission order leaves the carrier free to name any rate within those limits, and, as at common law, it must at its peril publish a reasonable rate within the bound-

---

[15] As a statute fixing or limiting rates to be charged by one whose business is affected by a public interest may be declared void for violation of the due process and equal protection clauses (*Dow* v. *Beidelman*, 125 U. S. 680; *Chicago & G. T. Ry. Co.* v. *Wellman*, 143 U. S. 339; *Budd* v. *New York*, 143 U. S. 517; *Covington Turnpike Co.* v. *Sandford*, 164 U .S. 578), an order made by a commission created by statute is subject to the like action of the courts (*Reagan* v. *Farmers' L. & T. Co.*, 154 U. S. 362; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19; *Minnesota Rate Cases*, 230 U. S. 352, 433–434). There is, however, in the case of a commission order, the additional element, that the courts will examine the question whether the administrative agency of the legislature has exceeded its statutory powers (*Skinner & Eddy Corp.* v. *United States*, 249 U. S. at p. 562, and cases cited) or has based its order upon a finding without evidence or upon evidence which clearly fails to support it (*Northern Pacific Ry. Co.* v. *Dept. of Public Works*, 268 U. S. 39).

[16] *Chicago, M. & St. P. Ry. Co.* v. *Minnesota*, 134 U. S. 418; *Reagan* v. *Farmers' L. & T. Co.*, 154 U. S. 362, 394; *Home Tel. & Tel. Co.* v. *Los Angeles*, 211 U. S. 265, 271; *Louisville & N. R. Co.* v. *Garrett*, 231 U. S. 298, 306; and compare the cases cited in note 12.

aries set by the order; that as it has the initiative it must take the burden, notwithstanding the Commission's order, of maintaining the rate at a reasonable level, and will be answerable in damages if it fails so to do. This argument overlooks the fact that in declaring a maximum rate the Commission is exercising a delegated power legislative in character;[17] that it may act only within the scope of the delegation; that its authority is to fix a maximum or minimum *reasonable* rate; for it is precluded by the statute from fixing one which is unreasonable, which by the statute is declared unlawful. If it were avowedly to attempt to set an unreasonably high maximum its order would be a nullity.

The report and order of 1921 involved in the present case declared in terms that 96.5 cents was, and for the future would be, a reasonable rate. There can be no question that when the carriers, pursuant to that finding, published a rate of 96 cents, the legal rate thus established, to which they and the shipper were bound to conform, became by virtue of the Commission's order also a lawful—that is, a reasonable—rate.

Specific rates prescribed for the future take the place of the legal tariff rates theretofore in force by the voluntary action of the carriers, and themselves become the legal rates. As to such rates there is therefore no difference between the legal or published tariff rate and the lawful rate. The carrier cannot change a rate so prescribed and take its chances of an adjudication that the substituted rate will be found reasonable. It is bound to conform to the order of the Commission. If that body sets too low a rate, the carrier has no redress save a new hearing and the fixing of a more adequate rate for the future. It cannot have reparation from the shippers for a rate collected under the order upon the ground that it was unreasonably

---

[17] *Oklahoma Operating Co.* v. *Love*, 252 U. S. 331, 335.

low. This is true because the Commission, in naming the rate, speaks in its quasi-legislative capacity. The prescription of a maximum rate, or maximum and minimum rates, is as legislative in quality as the fixing of a specified rate.

In *Oklahoma Operating Co.* v. *Love,* 252 U. S. 331, 335, it was said, " The order of the Commission prohibiting the company from charging, without its permission, rates higher than those prevailing in 1913, in effect prescribed maximum rates for the service. It was, therefore, a legislative order. . . . "

If by act of Congress maximum rates were declared lawful for certain classes of service, neither carrier nor shipper could thereafter draw into question in the courts the conduct of the other if it conformed to the legislative mandate, save by an attack on the constitutionality of the statute. By the amendatory legislation Congress has delegated to the Commission as its administrative arm its undoubted power to declare, within constitutional limits, what are lawful rates for the service to be performed by the carriers. The action of the Commission in fixing such rates for the future is subject to the same tests as to its validity as would be an act of Congress intended to accomplish the same purpose.

As has been pointed out, the system now administered by the Commission is dual in nature. As respects a rate made by the carrier, its adjudication finds the facts and may involve a liability to pay reparation. The Commission may, and often does, in the same proceeding, and in a single report and order, exercise its additional authority by fixing rates or rate limits for the future. But the fact that this function is combined with that of passing upon the rates theretofore and then in effect does not alter the character of the action.[18]

---

[18] *Interstate Commerce Comm.* v. *Cincinnati, N. Q. & T. P. Ry. Co.,* 167 U. S. 479, 499; *Baer Bros. Co.* v. *Denver & R. G. R. Co.,* 233 U. S. 479.

As respects its future conduct the carrier is entitled to rely upon the declaration as to what will be a lawful, that is, a reasonable, rate; and if the order merely sets limits it is entitled to protection if it fixes a rate which falls within them. Where, as in this case, the Commission has made an order having a dual aspect, it may not in a subsequent proceeding, acting in its quasi-judicial capacity, ignore its own pronouncement promulgated in its quasi-legislative capacity and retroactively repeal its own enactment as to the reasonableness of the rate it has prescribed.

The Commission in its report confuses legal concepts in stating that the doctrine of *res judicata* does not affect its action in a case like this one. It is unnecessary to determine whether an adjudication with respect to reasonableness of rates theretofore charged is binding in another proceeding, for that question is not here presented. The rule of estoppel by judgment obviously applies only to bodies exercising judicial functions; it is manifestly inapplicable to legislative action. The Commission's error arose from a failure to recognize that when it prescribed a maximum reasonable rate for the future, it was performing a legislative function, and that when it was sitting to award reparation, it was sitting for a purpose judicial in its nature. In the second capacity, while not bound by the rule of *res judicata,* it was bound to recognize the validity of the rule of conduct prescribed by it and not to repeal its own enactment with retroactive effect. It could repeal the order as it affected future action, and substitute a new rule of conduct as often as occasion might require, but this was obviously the limit of its power, as of that of the legislature itself.

The argument is pressed that this conclusion will work serious inconvenience in the administration of the Act; will require the Commission constantly to reëxamine the fairness of rates prescribed, and will put an unbearable

burden upon that body. If this is so, it results from the new policy declared by the Congress, which, in effect, vests in the Commission the power to legislate in specific cases as to the future conduct of the carrier. But it is also to be observed that so long as the Act continues in its present form, the great mass of rates will be carrier-made rates, as to which the Commission need take no action except of its own volition or upon complaint, and may in such case award reparation by reason of the charges made to shippers under the theretofore existing rate.

Where the Commission has, upon complaint and after hearing, declared what is the maximum reasonable rate to be charged by a carrier, it may not at a later time, and upon the same or additional evidence as to the fact situation existing when its previous order was promulgated, by declaring its own finding as to reasonableness erroneous, subject a carrier which conformed thereto to the payment of reparation measured by what the Commission now holds it should have decided in the earlier proceeding to be a reasonable rate.

The judgment is

*Affirmed.*

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS think that the judgment should be reversed for the reasons stated by Judge Hutcheson in the concurring opinion in *Eagle Cotton Oil Co.* v. *Southern Ry. Co.*, 51 F. (2d) 443, 445.