CORRAY et al. v. BALTIMORE & O. R. CO.
et al.

District Court, E. D. Illinois.
March 9, 1933.

John Sebat and Grant & Jones, all of
Danville, and Clarence B. Cordy, of Chicago,
Ill., for complainant.

J. H. Wright, of Chicago, Ill., and Kramer, Campbell, Costello & Wiechert, of East St.
Louis, Ill., for defendant.

LINDLEY, District Judge.

Plaintiffs Corray Bros. and C. B. De‑
Long bring this suit under section 16 of the
Interstate Commerce Act (49 USCA § 16),
to recover from defendant carriers repara-
tion for collection by defendants of unjust
and unreasonable freight charges upon coal,
moving in interstate commerce from two
certain Indiana districts to Champaign and
Urbana, Ill.

The Interstate Commerce Commission,
upon complaint of plaintiffs, in the case of
Corray v. Baltimore & Ohio Railroad Com-
pany, 161 I. C. C. 439, on December 23, 1930,
found that plaintiffs had made shipments of
coal between the points referred to and that
they had paid the charges thereon and were
entitled to reparation with interest on such
shipments in the amount of the difference
between the charges paid and those which
would have accrued at the rates found rea-
sonable by the Commission, namely, $1.25
per ton and $1.45 per ton from the two re-
spective Indiana districts. In a subsequent
order entitled Corray et al. v. B. & O. R. Co.
et al., 178 I. C. C. 527, on December 22, 1931,
the Commission found that the plaintiffs
had made certain shipments of coal from the
Indiana districts to the points named in Illi-
nois, and that the excess of such payments
over and above the aforesaid reasonable
rates amounted to the sum of $568.85 due
Corray Bros., and $478.84 due De Long, and
directed payment of said amounts to the re-
spective named plaintiffs on or before No-
vember 28, 1931, together with interest there-
on at the rate of 6 per cent. per annum.
Payment not having been made as directed,
plaintiffs instituted this suit to recover the
awards.

At the trial, plaintiffs offered in evidence
the findings and orders of the Commission
as aforesaid and, in addition, those in the
case of J. S. Bash & Sons et al. v. Central
Indiana Railway Co. et al., 153 I. C. C. 317,
decided March 30, 1929, wherein the Com-
mission found that rates on bituminous coal
from the said Indiana districts to the Illinois
points named were, are, and for the future
would be unreasonable to such extent as they
exceeded $1.25 per ton from the Brazil-Clin-
ton district and $1.45 per ton from the Lin-
ton-Sullivan district.

Defendants offered in evidence a tran-
script of the evidence before the Commission
in the proceedings resulting in the orders
upon which suit was brought, a copy of the
complaint filed before the Commission and
a list of rates submitted by defendants at
the hearing in the case of Bash & Sons et

al. v. Central Indiana Railway Co. et al., supra, showing rates on coal between various alleged comparable points in the United States.

Plaintiffs claim that by submission of the findings and orders of the Commission it has made a prima facie case under the statute and that the defendants have in no wise rebutted the same. Defendants contend that there was no competent evidence before the Commission upon which it might base a finding of unreasonableness, that a petition for rehearing now pending should inspire the court to delay final hearing here until the Commission should pass upon the same and that the evidence of comparable rates submitted is not proof negativing the alleged unreasonableness which was the basis of the Commission's award.

The question of whether or not there was any substantial evidence before the Commission depends upon whether the finding and order of the Commission in the Bash Case were before it as evidence in the Corray Case, and whether, if they were in evidence, they can be the basis for the finding in the present case. The freight rates involved in the Bash Case were identical with those with which we are here concerned. They covered the same period of time. The only difference between the two cases was one of claimants and of amounts.

■ Counsel are not in agreement as to the status of the record before the Commission. Upon examination, I find that, though the hearing was rather informal and apparently the conventional offer in evidence was not made, it was clearly understood between the parties and the examiner that the finding and order of the Commission in the Bash Case were in the record. The transcript shows that counsel for the plaintiffs stated that plaintiffs were resting their case "except for evidence covering the paying and bearing of the charges, on the decision of the Interstate Commerce Commission in docket No. 19468, known as J. S. Bash & Sons, Inc., under which rates have already been reduced; and the only question remaining now is that of proving the amount of reparation that is due under the order of the Commission." He further said, "We do not intend to offer any traffic testimony at this time, the case having been already submitted, and it would be merely a repetition, and an unnecessary taking up of the time of the commission." The examiner then said, "The finding of the Commission, as I see it, is embraced in a paragraph or two at the conclu-

sion of the report in Docket 19468, 153 I. C. C. page 322, wherein the Commission says: We find that the rates assailed were, are and for the future will be, unreasonable, to the extent that they exceeded, exceed or may exceed the following in cents per net ton—and then follows a tabulation setting forth what the rates should have been, what they should be, and what they must be for the future." The examiner inquired of counsel if he rested upon such finding, and counsel replied in the affirmative. It appears that the points of origin were the same, and that the destination of Champaign and Urbana were included within the destinations of the original record. The examiner put his inquiry thus, "You elect not to introduce any further traffic testimony at this time?" Again the answer was in the affirmative. Obviously in this situation it was understood by the parties that the finding and order of the Commission in the Bash Case were made a part of the record, were considered in evidence, and were treated as the basic foundation for the entry of the finding and order included in the present case.

In A. J. Phillips Co. v. Grand Trunk Western R. Co., 236 U. S. 662, 35 S. Ct. 444, 445, 59 L. Ed. 774, the court was dealing with the complaint of a shipper against a rate established on lumber by carriers, and seeking to recover the alleged unreasonable overcharges. This suit was based upon a finding by the Commission upon a previous complaint of an association of similar shippers that the rates in controversy were unreasonable. It was insisted that, as plaintiff was not a party before the Commission, it could not take advantage of the previous order that the rate was unjust so as to be able to maintain the then present suit. The court said: "The proceeding before the Commission, to determine the reasonableness of the 2-cents advance, was not in the nature of private litigation between a lumber association and the carriers, but was a matter of public concern in which the whole body of shippers were interested. The inquiry as to the reasonableness of the advance was general in its nature. The finding thereon was general in its operation, and inured to the benefit of every person that had been obliged to pay the unjust rate. Otherwise those who filed the complaint, or intervened during the hearing, would have secured an advantage over the general body of the public, with the result that the order of the Commission would have created a preference in favor of the parties to the record, and would have destroyed the very uniformity which

that body had been organized to secure. The plaintiff and every other shipper similarly situated was entitled by appropriate proceedings before the Commission or the courts to obtain the benefit of that general finding and order."

It follows therefore that plaintiffs, under the teaching of the cited case, were entitled to rely upon the finding and order of the Bash Case as evidence. The finding that the particular rates complained of were unreasonable, the Supreme Court pointed out, inured to the benefit of the general public, and to allow it to apply in one case and not in another would effect rebates or discriminations, which are condemned by the statute.

It is said by the defendants, however, that, the rates in question having been legal rates, approved by the Commission, that body could not thereafter find that the rates thus established were unlawful and unreasonable. It has been repeatedly recognized by the Supreme Court and emphasized in the comparatively recent case of Arizona Grocery Co. v. A., T. & S. F. R. Co., 284 U. S. 370, 52 S. Ct. 183, 186, 76 L. Ed. 348, that the Interstate Commission occupies a dual position and exercises dual capacity; that, in the fixing of rates, it is a legislative body performing a legislative function under a delegation of authority so to do from Congress; that, in hearing complaints against existing carrier rates and finding the same to be unreasonable and granting reparation, it is exercising judicial functions; that previously the Commission could not in one hearing find a carrier rate to be unreasonable and grant reparation and also promulgate reduced rates for the future, but that under the present legislation it is proper for it to perform both the judicial function of granting relief and the legislative functioning of promulgating rates for the future in one and the same hearing.

The court, through Mr. Justice Roberts, pointed out that as a legislative body the Commission could not declare unreasonable a rate previously fixed by it as a reasonable rate. The reason for such holding is obvious, and is to be found in this sentence of the opinion: "In the second capacity, while not bound by the rule of res judicata, it was bound to recognize the validity of the rule of conduct prescribed by it, and not to repeal its own enactment with retroactive effect." As the court pointed out, rates fixed by the carriers under the power granted to them by Congress become legal rates upon the filing and publishing of the same with the Commission, and deviation from such published rates was declared a criminal offense and a civil wrong. However, such rates are not the result of legislative act by the Commission. They are the legal act of the carrier, and, in the absence of a specific finding by the Commission of reasonableness in pursuance of its legislative capacity, there is no estoppel against the Commission thereafter granting relief against the same. The reason for estoppel being in the fact that no legislative act may be retroactive to the detriment of citizens, in the absence of any legislation there is nothing that can be urged as retroactive.

It is insisted that the comparative rates offered in evidence by the defendant negative unreasonableness. While it is true that the evidence discloses that rates for similar distances in other parts of the country are in excess of those held unreasonable between the destinations involved in the present case, I am impelled to hold that there is not sufficient evidence to disclose that the Commission was in error in its award of reparation. By the finding and order of the Commission, there is created a prima facie case which must be overcome by evidence of the defendants. The isolated rates in other districts of themselves have not sufficient evidentiary force to overcome the specific findings of the Commission in a proceeding where evidence was submitted and findings entered as to specific rates. What the comparative circumstances of carrying conditions and other material features were and are in the different localities does not appear.

Counsel for the defendants have asked the court to delay decision in this proceeding until the Commission shall have ruled on the defendants' petition for reconsideration. This is an appeal to the discretion of the court. The decision of the court in the case of Gulf, M. & N. R. Co. et al. v. Merchants' Specialty Co. (C. C. A.) 50 F.(2d) 21, is in point in this respect. I do not deem it advisable to delay final hearing in this court.

I find a reasonable attorney's fee for plaintiffs' attorney to be $175.

There will be a judgment in favor of respective plaintiffs against the respective carriers for the respective amounts of award, with interest at the rate of 6 per cent. per annum from the date of award and an attorney's fee of $175 to be contributed by the carriers in accordance with the respective amounts due from each of the same. Proper form of judgment, including computation in this respect, may be submitted.