**PITZER TRANSFER CORPORATION et al. v. NORFOLK & W. RY. CO. et al.**

No. 5450.

District Court, D. Maryland.

March 28, 1935.

Michael Paul Smith, of Baltimore, Md., and Charles E. Cotterill, of New York City, for plaintiffs.

W. Ainsworth Parker, of Baltimore, Md., and John C. Donnally, Legal Department, Virginian Ry. Co., and D. Lynch Younger, both of Washington, D. C., for defendants.

CHESNUT, District Judge.

The question of law presented at this time in the above case relates to the authority of the Interstate Commerce Commission to make a reparation award in favor of the plaintiffs against the defendants for alleged excessive rates collected on coal shipments from West Virginia and Virginia points to Roanoke, Virginia.

The amount awarded by the Commission to the Pitzer Transfer Corporation against the Norfolk & Western Railway was $1,320.77; and against the Virginian Railway Company, $700.89. And to Rosebro there was likewise awarded against the Norfolk & Western $477.70, and against the Virginian, $47.08. These awards were made by the Interstate Commerce Commission by order dated April 23, 1934, payable on or before July 1, 1934, covering carload shipments of coal in the period between September 8, 1930 and March 17, 1933. The rate paid by the plaintiff was $2.00 per ton which was adjudged unreasonable and excessive by the Commission to the extent of ten cents per ton. 200 I. C. C. 720. The case was submitted to the Commission on the record developed in the previous case of State Corporation Commission of Virginia et al. v. Norfolk & Western Railway Co., 190 I. C. C. 325, dealing comprehensively with the subject of "Rates on bituminous coal, in carloads, from mines on the Norfolk & Western and the Virginian railways

to points in Virginia," in which the rates were found unreasonable in the past and reparations awarded therein to various shippers, and reasonable rates prescribed for the future.

The two Railway Companies refused to abide by the order of the Commission for the payment of reparations and the plaintiffs have filed this suit for damages as authorized by the Interstate Commerce Act of 1887 with subsequent amendments (49 USCA § 1 et seq.) and particularly sections 16 (2) and (4), 49 USCA § 16 (2, 4) which authorize the filing of such suits in the United States District Court for the district through which the road of the carrier runs and the joining in said suit of joint plaintiffs and joint defendants, in any district where any one of such joint plaintiffs could maintain such suit against any one of the joint defendants. The jurisdictional requirement is gratified in this case by reason of the fact that a portion of the railway of the Norfolk & Western lies in the district of Maryland although that of the Virginian Railway does not.

The defendants have filed general issue plea and several pleas in bar, the averments of which are made fuller and more specific by the statements in the bill of particulars, filed upon the plaintiffs' demand. To these pleas thus particularized the plaintiffs have filed demurrers. There are two defenses set up in the pleas as follows: (1) That the Interstate Commerce Commission was without authority to make the reparation awards because it had in a prior proceeding (Mathieson Alkali Works, Inc., v. Carolina, C. & O. Ry., 77 I. C. C. 150, decided January 15, 1923) *approved* the reasonableness of the rates charged by the Railways in issue in this case. The defendants contend that they were entitled to rely upon that decision of the Commission and that it may not in a subsequent proceeding ignore its own pronouncement and retroactively repeal its own determination as to reasonableness of the rate by thereafter awarding reparation on shipments which moved under that rate. And (2) alternatively, it is, contended that the rates now held unreasonable by the Commission had long been in effect and freely used by shippers without complaint and that the history of the particular rates was such as to justify the defendants in their belief that they were maintaining reasonable rates which had the Commission's approval. It is contended that, therefore, the Commission lacked authority to condemn those rates as to past transactions by an award of reparation on past shipments, which is equivalent to penalizing the defendants for doing that which the Commission had told them they might do.

The defendants rely for their position on Arizona Grocery Co. v. Atchison, Topeka & Santa Fé Ry. Co., 284 U. S. 370, 52 S. Ct. 183, 76 L. Ed. 348, and the interpretation and application thereof made by the Circuit Court of Appeals for the Ninth Circuit in what is called the Second Arizona Grocery Co. Case, more fully entitled Arizona Wholesale Grocery Co. v. Southern Pacific Co., 68 F.(2d) 601.

In the First Arizona Grocery Co. Case the Supreme Court by Mr. Justice Roberts said, 284 U. S. at page 390, 52 S. Ct. 186, 76 L. Ed. 348:

"Where the Commission has, upon complaint and after hearing, declared what is the maximum reasonable rate to be charged by a carrier, it may not at a later time, and upon the same or additional evidence as to the fact situation existing when its previous order was promulgated, by declaring its own finding as to reasonableness erroneous, subject a carrier which conformed thereto to the payment of reparation measured by what the Commission now holds it should have decided in the earlier proceeding to be a reasonable rate."

In that case the Supreme Court was dealing with a reparation order made by the Commission against railroad carriers which had conformed their rates to a prior order of the Commission prescribing maximum reasonable rates, rather than specific rates. The opinion points out the now well established distinction between semi-judicial and legislative or administrative functions of the Commission. As is well known, by the Hepburn Amendment to the Interstate Commerce Act and by the Transportation Act, Congress granted to the Commission first, power to fix the maximum reasonable rate and second, to prescribe a named rate, or the maximum or minimum reasonable rate, or the maximum and minimum limits within which the carriers' published rates must come. And when the Commission does so fix rates it is acting in its *legislative capacity;* while, when it determines that a rate previously fixed by the carrier itself (and not by the Commission) is unreasonable and awards reparation for past excessive charges, it is acting in a *quasi-judicial* capacity. The distinction is clearly

438

perceived when it is borne in mind that a judicial determination necessarily has regard to the past or present and not to the future; while a legislative act is effective (by reason of constitutional limitation) as to the future only. See Baer Bros. Mercantile Co. v. Denver & R. G. R. Co., 233 U. S. 479, 34 S. Ct. 641, 58 L. Ed. 1055; Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 167 U. S. 479, 499, 17 S. Ct. 896, 42 L. Ed. 243; and Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 S. Ct. 67, 69, 53 L. Ed. 150; Rosslyn Gas Co. v. Fletcher (D. C.) 5 F. Supp. 25. In the Prentis Case the distinction is succinctly and comprehensively stated by Mr. Justice Holmes as follows:

"A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative not judicial in kind. * * *"

Stated in other words, the distinction made is marked by the difference between the nature of the Commission's functions when dealing with a *carrier made rate,* and with a *commission made rate.* While the Commission is now authorized to prescribe rates for the future, as a matter of fact the great majority of all rates are still carrier made because the power to initiate rates still resides with the carriers unless and until the Commission has acted. In determining whether a carrier made rate was reasonable for the past, as when the Commission is passing on a complaint asking reparations, the Commission is acting in its quasi-judicial capacity; but when it prescribes or fixes a rate for the future, then the Commission is acting in a legislative capacity. Confusion may result in reading the cases unless the distinction is borne in mind; and it is apt to result by the reason of the not infrequent practice of the Commission to adjudicate in one order unreasonableness of the carrier made rate in the past and to prescribe for the future a commission made rate.

■ What the Supreme Court decided in the First Arizona Grocery Co. Case was that, while a commission made rate is in effect, that is, until it is changed by the Commission itself, rates charged by a carrier in accordance therewith cannot by subsequent determination of the Commission be adjudicated unreasonable and, therefore, reparation orders may not be issued against railroads which have conformed to the commission made rate while it was in force. It is apparent, however, as a result of the distinction pointed out that where the Commission does not prescribe a rate for the future, but merely exercises its semi-judicial function in passing on the reasonableness in the past of carrier made rates, its action is not binding for the future on the Commission itself as an adjudication by way of estoppel or otherwise, nor is it available as a protection to the carrier in the continuance of carrier made rates for the future. That is to say, a mere determination by the Commission in say 1923, that carrier made rates then prevailing were not unreasonable, without fixing the rate for the future, is obviously no adjudication binding on the Commission in 1933 that the same carrier made rates or even lesser rates, under the conditions prevailing ten years later are still reasonable.

■ These considerations serve to sharply define the issue of law between the parties in the present case. The defendants rely upon the Commission case of Mathieson Alkali Works, Inc., v. Carolina, C. & O. Ry., 77 I. C. C. 150, as a complete bar to the authority of the Commission in making the present reparation order. The simple question, therefore, presented is whether the Commission's order in the Mathieson Case was legislative or only semi-judicial. An examination of the case shows very plainly that it falls within the latter and not in the former category. Certain coal shippers in 1922 complained to the Commission that interstate rates for coal from the mines on the Norfolk & Western Railway from Virginia and West Virginia points, known as the Pocahontas, Thacker, Kenova & Clinch Valley Districts, to stations on the Norfolk & Western Railway and connecting branches between Roanoke and Bristol, Virginia-Tennessee, were unreasonable. On consideration of the evidence submitted the Commission determined as follows:

"We find that the rates assailed are not unreasonable or otherwise unlawful. The complaint is dismissed."

It is apparent the Commission made no effective order for the future and was, therefore, acting in its semi-judicial and not in its legislative capacity.

Defendants, however, do not accept this conclusion as determinative of the question because they say that even if the Commission was not acting in a legislative capacity with regard to rates for the future, it at least *approved* the rates prevailing in 1923 and it is said the rates now condemned in 1934 conform to the rates so previously approved in 1923. Plaintiffs do not admit the identity of the rates approved in 1923 as not unreasonable with those condemned in 1934 and point out there is no complete identity of the points of origin and destination. But conceding, for the purpose of the case, the substantial identity of the two rates, nevertheless I fail to find justification for the defendants' position. They rely upon the phrase in the Supreme Court's opinion in the Arizona Grocery Co. Case "approved or prescribed." Thus the opening paragraph of the opinion reads: "This case turns upon the power of the Interstate Commerce Commission to award reparations with respect to shipments which moved under rates *approved or prescribed*." (Italics supplied.) A similar collocation of these words appears elsewhere in the opinion. It is said by defendants' counsel that the necessary meaning of the opinion as a whole is that the Commission may not order reparations with respect to particular rates which have been either approved or prescribed by the Commission. The word "prescribed" is obviously clearly applicable to rates which must be observed by the carrier in the future; while the word "approved" can be understood in the sense of either approval for the future or approval for the past. Thus it is argued by the defendants that if the Commission has approved a particular rate in the past and has refused reparations to a complaining shipper, it may not years later under different conditions condemn rates previously approved. In my view, however, the contention is not sound, because looking at the opinion as a whole, I think it entirely clear that the phrase "approved or prescribed" was used by Mr. Justice Roberts in its relation to the future and not to the past with respect to the Commission's action. In the first place it must be borne in mind that the court was dealing with a Commission order which did fix and determine maximum reasonable rates for the future, that is to say, it held the reparation order which gave rise to the case invalid because of a prior Commission order which had fixed a future rate, with which the carrier had complied. There was no contention in the case that the particular reparation order condemned would have been invalid if the prior order of the Commission had been only semi-judicial in its nature and not legislative. This, however, is the contention now advanced by the defendants. Again the reasoning of the court is directed to the historical development of the law of rates and the relation of the courts and legislature thereto, at common law and under the Interstate Commerce Commission as first enacted in 1887, and the change effected by subsequent amendments. The only question in the case was whether, if the prior order of the Commission was legislative in character, it could be retroactively changed by a subsequent order of the Commission. Therefore, I find no warrant from the case to conclude that even by implication the hands of the Commission are tied by a prior determination merely semi-judicial and not legislative in character. See, also, Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U. S. 358, 362, 53 S. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254.

It will also appear from the arguments of counsel that no point was raised to the effect that an approval by the Commission of an existing rate, in a complaint asking reparation for the past, is a bar to subsequent reparation orders growing out of the same rate. Reference may also be made to the basis of the dissent by Mr. Justice Holmes and Mr. Justice Brandeis who thought that the estoppel against the Commission in the particular case should not have been permitted for the reasons stated by Judge Hutcheson in his concurring opinion in Eagle Cotton Oil Co. v. Southern Ry. Co., 51 F.(2d) 443, 445 (C. C. A. 5). Circuit Judge Hutcheson there took the view that the Commission could validly make reparation orders when dealing with commission made rates as well as with carrier made rates. The majority opinion, however, explicitly based the decision on its finding that the Commission was dealing with a carrier made rate. The contention of the carrier there seems to have been that of the carriers here, but was rejected by the Court, and certiorari was denied. Id., 284 U. S. 675, 52 S. Ct. 130, 76 L. Ed. 571.

The defendants' contention here was presented to the Commission in the case (above referred to) of State Corporation Commission of Virginia v. Norfolk & Western Ry. Co., 190 I. C. C. 325, 344, and was answered, correctly I think, by the Commission as follows:

"In the Arizona Grocery Co. Case, the Supreme Court had before it the propriety of our action in awarding reparation on shipments which were charged rates established in accordance with a prior and specific order entered in a previous proceeding. The Supreme Court held that we did not have such authority. The situation here appears different from that considered in the Arizona Grocery Co. Case. The only points here involved to which we have heretofore specifically prescribed rates from the Pocahontas district are Martinsville and Lynchburg. Rates to those points were prescribed in 1913 and 1915, respectively. Since that time those rates have been subjected to the various general increases and reductions authorized by us."

██ It is said, however, that a contrary view has been acted on by the Circuit Court of Appeals for the Ninth Circuit in the Second Arizona Grocery Co. Case, 68 F. (2d) 601. While the defendants concede the decision is not imperative law in this different circuit, they nevertheless place much reliance upon the opinion as a very persuasive authority. In this connection it may be observed that it is the general view in this district that a decision of the Circuit Court of Appeals in another circuit, not inconsistent with the decisions of the Supreme Court or of the Court of Appeals of this circuit, will be followed. Imbrovek v. Hamburg-American Steam Packet Co. (D. C.) 190 F. 229, 233. The defendants deduce from the opinion in the Second Arizona Grocery Co. Case the conclusion that the court was of the opinion that the Supreme Court in the First Arizona Grocery Co. Case determined that a commission order which there approved particular rates for the past as not unreasonable, could not be retroactively reversed by a subsequent commission order. While there is some general language in the opinion which gives color to this view, I doubt whether this interpretation of the opinion is wholly justified. The opinion must be read in sequence with the opinion of the same court in the First Arizona Grocery Co. Case (C. C. A.) 49 F.(2d) 563, followed by the opinion of the Supreme Court in 284 U. S. 370, 52 S. Ct. 183, 76 L. Ed. 348. It will be noted that the quite extended opinion concerns itself most particularly with an analysis of numerous prior orders of the Commission, and it is particularly to be noted that the Second Arizona Grocery Co. Case grew out of the *same order* for reparations that was involved in the first Arizona Grocery Co. Case although it appears the carrier and the particular shipping point differed. The Circuit Court of Appeals said, at page 604 of 68 F.(2d):

"It should be noted that the appeal in the Arizona Grocery Co. Case, supra, and the appeal that we are now considering, both were from judgments of the same District Court in cases arising from the *identical* report of the Interstate Commerce Commission; namely, the one appearing in [Traffic Bureau of Phoenix Chamber of Commerce v. Atchison, T. & S. Fé Ry. Co.] 140 I. C. C. 171. Reference to that report shows that several cases were there considered together, one of them being the Arizona Grocery Co. suit, supra, and the instant case constituting another. The identity of origin of the two cases is established by footnotes on page 171 of 140 I. C. C. in the Third Phœnix Case, supra, and on page 382 of 284 U. S., 52 S. Ct. 183 [76 L. Ed. 348], in the Supreme Court's opinion in the Arizona Grocery Co. Case, supra, as well as by the opinion of this court in Atchison, Topeka & Santa Fé Ry. Co. v. Arizona Grocery Co. [C. C. A.] 49 F.(2d) 563, 564."

The opinion as a whole is too lengthy for even condensed analysis here but I think it is susceptible of the view that the court construed the prior Commission order, relied on as a bar to the subsequent reparation order, as in the nature of legislative action by the Commission. See Woodrich v. Northern Pac. Ry. Co., 71 F.(2d) 732, 735 (C. C. A. 8). The view expressed was that a finding by the Commission, although negative in form, could be treated as positive in character. At all events I do not think the case is authority for the defendants' contention that an action of the Commission merely semi-judicial in character is a bar to subsequent reparation orders. But even if the defendants' view of the case is correct, I still think I am bound to follow what I understand to be the meaning of the Supreme Court in the first Arizona Grocery Co. Case.

██ I think it unnecessary to discuss at length the defendants' second contention above set out. The effect of it bears rather on the merits of the Commission's determination than upon the authority of the Commission to make the determination. The facts may be admissible evidence under the general issue plea. The action of the Commission in several prior cases affecting rates on coal in the same general territory

are referred to as justification for the carriers' reasonable belief that they were charging only such rates as were approved by the Commission. But the orders of the Commission referred to did not prescribe rates and were not legislative actions, with one or two exceptions not identical with the rates here involved. We must remember that if, as we find the case to be, the rates here dealt with were carrier made and not commission made rates, there was no lack of authority on the part of the Commission in passing the reparation orders. Even though the carriers reasonably believed that their rates were reasonable, nevertheless, as at common law, they took the risk of a judicial determination to the contrary.

The views herein expressed, and the conclusion reached, seem to be in general conformity with two quite recent district court cases of similar character in which the Arizona Grocery Co. Case, 284 U. S. 370, 52 S. Ct. 183, 76 L. Ed. 348, was considered. Jones v. Alton & S. R. Co. (D. C. E. D. Ill.) 6 F. Supp. 807; Louisiana Oil & Refining Corporation v. Texas & P. R. Co. (D. C. W. D. La.) 7 F. Supp. 1012. In the first of these cases District Judge Lindley said, page 810 of 6 F. Supp.:

"In Corray v. Baltimore & O. R. Co., 2 F. Supp. 829, this court held that under the Arizona Grocery Co. Case, as a legislative body, the Commission could not declare unreasonable a rate previously fixed by it as a reasonable rate. * * * In the absence of a specific finding by the Commission of reasonableness, in pursuance of its legislative capacity, there is no estoppel against it thereafter granting relief against the same, if it finds them in fact unreasonable. * * * The test laid down by the Supreme Court for determining whether the Commission has lost jurisdiction to award reparation is whether it has specifically prescribed a specific rate for the future by legislative order. Brimstone R. & Canal Co. v. United States, 276 U. S. 104, 48 S. Ct. 282, 72 L. Ed. 487; Great Northern Ry. Co. v. Sunburst Oil & Refining Co., 287 U. S. 358, 53 S. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254."

For these reasons in my opinion the plaintiffs' demurrer must be sustained as to all the defendants' pleas with the exception of the general issue plea. If there is no other defense to be interposed in the case than those set up in the special pleas as amplified by the bill of particulars, this decision can be made final by the defendants withdrawing the general issue plea, declining to amend or plead further and suffering a judgment by default, without, of course, waiving the objection apparent on the record to the overruling of their demurrer to the special pleas.