**AMERICAN CRYSTAL SUGAR COMPANY, a New Jersey corporation, Plaintiff,**

v.

**GREAT NORTHERN RAILWAY COMPANY, a Minnesota corporation, Defendant.**

Civ. No. 5660.

United States District Court
D. Colorado.

Nov. 14, 1958.

Lewis, Grant & Davis, Donald W. Hoagland and Louis A. Harris, Denver, Colo., for plaintiff.

J. C. Street, W. L. Peck, Denver, Colo., and Elmer B. Trousdale, St. Paul, Minn., for defendant.

ALFRED A. ARRAJ, District Judge.

This case is before the Court on motions for summary judgment filed by each of the parties. The undisputed facts are as follows:

Plaintiff operates several sugar factories in Minnesota and defendant transports freight in Minnesota as a common carrier. In 1952 the Interstate Commerce Commission, by Ex parte 175, allowed common carriers of freight by railroad to increase their freight rates on interstate traffic generally by 15%. Following this, defendant sought and was granted authority by the Minnesota Railroad and Warehouse Commission to apply this increase to intrastate traffic, but sugar beets were excepted from this increase. In 1953 permission to apply the

increase to sugar beets moving intrastate was again denied by the Minnesota Commission.

In 1954, plaintiff completed a new sugar factory at Wilds, Minnesota. Defendant then applied by letter to the Minnesota Commission for authority to publish rates applicable to beets moving to that installation. The letter set out the existing rates that would have been applied under the Cashman Distance Scale and the proposed special rates, which latter were uniformly lower from all points from which sugar beets were to be shipped. The Commission, without hearing or notice, approved the petition and, by letter dated June 17, 1954, notified defendant that the petition had been considered by the Commission and that publication could be made as proposed. These new rates to Wilds were, in effect, the special rates then applied to plaintiff's other factories plus the 15% increase that had previously been twice denied to the other special sugar beet rates by the Commission.

On September 8, 1954, plaintiff began a proceeding before the Commission to reduce the new rates and bring them in line with rates applicable to plaintiff's other sugar factories. On October 21, 1954, the Commission found the new rates to be unreasonable and ordered them reduced by October 29, 1954. During the interim, from September 13, 1954 to October 23, 1954, plaintiff paid the higher rates and now seeks to recover the difference.

The Minnesota Commission in January, 1956, again refused to authorize the Ex parte 175 increase on sugar beets. Finally, in April, 1957, the Interstate Commerce Commission found that intrastate rates for sugar beets in Minnesota were abnormally low and ordered them increased by the amount of the Ex parte 175 increases.

On these facts, the issue to be determined is whether plaintiff is entitled to reparations. The general rule is that a rate prescribed or approved by a Commission, acting under its delegated legislative authority, bars reparations

for charges or rates collected thereunder. Arizona Grocery Co. v. Atchison, Topeka & Santa Fe Ry. Co., 1932, 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348; Arizona Wholesale Grocery Co. v. Southern Pacific Co., 9 Cir., 1934, 68 F.2d 601; Pitzer Transfer Corp. v. Norfolk & W. R. Co., D.C.Md.1935, 10 F.Supp. 436. This rule is based on the theory that when a Commission thus approves a rate, it does so in its legislative capacity and the carrier concerned is entitled to rely on the rate just as if it were contained in a statute. Only when the rate is carrier-made, does the carrier assume responsibility for its reasonableness. In the case at bar, it is noted that the Minnesota Commission specifically approved the rates proposed.

 Although the same Commission three months later decided that the rates were unreasonable, it does not follow, as a matter of law, that they were unreasonable at the time they were first effective. The following reasons, we believe, support this: First, the Commission order of October 21, 1954, does not by its terms make the rates unreasonable retroactively. It speaks only as of the date of the order. Second, the Minnesota statutes specifically provide that if the Commission concludes that the change proposed is fair and reasonable, it may grant the application without notice and hearing. Minnesota Statutes Annotated, Sec. 218.11. This the Commission did in this instance. Third, another Minnesota Statute provides that rates so published "shall be deemed just and reasonable." Minnesota Statutes Annotated, Sec. 218.09.

Plaintiff argues that perfunctory Commission action will not bar reparations, citing State ex rel. Boynton v. Public Service Commission, 1932, 135 Kan. 491, 11 P.2d 999. That case, however, reached the result it did because the Court decided that the Commission did not determine the reasonableness of the rates. Under the applicable Kansas statutes, the Commission there had the power to determine the reasonableness of proposed rates for the future as well as the reasonableness of rates charged in the past. On the other hand, where statutes, such as those in Minnesota, require a finding of reasonableness by a Commission and expressly state that rates published pursuant to Commission approval shall be deemed reasonable, this Court is of the opinion that the reasonableness of those rates cannot be questioned in an independent action for reparations.

Consequently, this Court must conclude (1) that the rates were approved by the Commission, (2) that they were determined to be reasonable by the Commission, and (3) that reparations are therefore barred. Since this conclusion disposes of the case, it is not necessary to determine the other issues raised by the parties herein.

It is therefore the decision of the Court that defendant's motion for summary judgment be granted and that plaintiff's motion for summary judgment be denied.

Defendant will prepare and submit an appropriate order in conformance herewith.