ARTEMUS–JELLICO RAILROAD COMPANY et al., Appellants,

v.

RAILROAD COMMISSION OF KENTUCKY ex rel. C. L. RIGSBY, Chairman, Appellees.

Court of Appeals of Kentucky.

June 14, 1974.

John Hopkins, Hazelrigg & Cox, Frankfort, John P. Smith, Jr., Louisville & Nashville Railroad, Louisville, James L. Howe, III, Southern Railway System, Washington, D. C., for appellants.

John B. Breckinridge, Atty. Gen., Frankfort, Chester L. Rigsby, Chairman, Railroad Commission of Kentucky, Louisville, Chat Chancellor, Chancellor, Darnell & Smith, Frankfort, Robert E. Webb, Wallace & Webb, Louisville, for appellees.

VANCE, Commissioner.

Increased tariff rates proposed by appellant rail carriers by means of Supplement 70 to Freight Tariff 388K and by Supplement 74 to Freight Tariff 388K to become effective August 22, 1968, were declared invalid by a judgment of the Franklin Circuit Court and a refund of the overcharge to shippers was directed. The railroads appeal.

In 1960 the Interstate Commerce Commission authorized a general interstate increase in rail-carrier rates. Appellant carriers thereafter petitioned the Kentucky Railroad Commission for approval of a similar rate increase for intrastate transportation of various commodities in a proceeding styled Ex Parte 223 Increases in Kentucky docketed by the Kentucky Railroad Commission as Docket Number 816.

By order dated May 16, 1961, the Railroad Commission approved the rate increases as requested with three exceptions: (1) rate increases for transportation of coal were taken under advisement pending further orders of the commission; (2) increased charges for terminal switching were taken under advisement pending further orders of the commission and (3) increases in the rates on sand, gravel, crushed stone, slag and related articles were limited to one percent with a maximum of ten cents per net ton.

In its report and findings the commission noted that it did not approve the increases on coal and terminal switching for the reason that the Interstate Commerce Commission had not given its final approval to those increases. It also noted that as to sand and stone the increased rates would cause a substantial diversion of traffic from the rail carriers to other forms of transportation.

The report stated that its findings "as to justness and reasonableness herein applies only to the general basis of rates and charges and it is not to be understood that such findings approvēs or prescribes as

just and reasonable any individual rate or charge; nor are the rates and charges increased as herein authorized to be considered as prescribed within the meaning of the decision in Arizona Grocery Company v. AT & SF Railway, 284 U.S. 370 [52 S. Ct. 183, 76 L.Ed. 348]."

The action was ordered to remain on the docket of the commission until further orders. The commission, by subsequent orders, approved increases in the terminal switching charges.

In July 1968, the appellants published a schedule of rate changes to become effective August 22, 1968. These changes increased the rates of transportation of sand and stone eight cents per ton and in some instances nine cents per ton.

On August 20, 1968, appellants published another rate schedule denominated Supplement 74 which had the effect of changing the rate on 150-mile hauls from $1.50 to $1.60. The effective date of this change was August 22, 1968, and the carriers contend its only purpose was to correct an error in the schedule of rates which was published in July 1968.

KRS 276.160 provides for changes of rates by publication as follows:

"276.160. *Notice of change of rate schedules.*—(1) Except as provided in subsections (2) and (3) of this section, no change shall be made in the schedule of rates or tariff of any express company or carrier by rail until after at least thirty (30) days' notice to the railroad commission and to the public, published in the same manner as the original schedule or tariff is required to be published under KRS 276.130. Any changes to be made, and the effective date of the proposed change, shall be shown by new schedules or supplements, printed or published in legible form.

"(2) The railroad commission may, for good cause shown, enter an order of record allowing changes in the schedule or tariff upon less notice.

"(3) Changes in rates ordered by the railroad commission under the provisions of KRS 276.170, 276.180, 276.200, 276.310 and 276.320 shall be made and take effect as provided in those sections and in KRS 276.370. (201e-3, 201g-5)."

■ The railroad commission has supervisory powers over rates of rail carriers by virtue of KRS 276.170 which provides for suspension of proposed rate increases and the holding of hearings as to the propriety thereof before the rates become effective. KRS 276.180 and 276.310 provide for determination of prescribed rates in cases involving obligations imposed by law with respect to rates and in cases of extortion. When rates are fixed pursuant to KRS 276.310 no carrier may thereafter charge a rate higher than fixed by the order.

The hearings before the railroad commission in 1960 considered the propriety of proposed rates before they became effective. KRS 276.170 was the applicable statute under which the commission was vested with jurisdiction to conduct the hearing.

As a result of the hearing the commission failed to approve the proposed rate increases upon sand, stone and related commodities and specifically limited the extent to which rates could be increased upon those items. The commission concedes however that the rate for sand and stone, as limited in its order, was not a prescribed rate and that the publication by the carriers of new rates in 1968 would have been proper if the commission had not retained the case on the docket for further orders. Because the case was retained on the docket, the commission contends that it was incumbent upon the carriers to reopen the 1961 hearing and secure commission approval before changing any of the rates approved by the 1961 order.

■ We do not think the retention of the case upon the docket for further orders had the effect contended by the commission. One obvious reason why the case was continued upon the docket for further

orders was that the original order did not dispose of the question of the proposed rate increases for transportation of coal and for terminal switching. The order specifically recited that those increases were taken under advisement pending further orders of the commission and the commission, by further orders, eventually disposed of the terminal switching increases. The May 1961 order completely disposed of the proposed increase in rates as to sand, stone and other related commodities. There was no further action or order necessary with regard to those commodities.

Although the commission concedes that it did not in 1961 attempt to determine the justness and reasonableness of the individual rates and that its order did not constitute a prescribed rate, it would have the effect of a prescribed rate if the rate could not thereafter be changed without prior approval of the railroad commission. This, in effect, would permit the railroad commission to prescribe every rate without holding the hearings required by statute by the device of retaining the case upon the docket. Such an attempt must fail where as in this case no apparent reason can be discerned for the retention of the matter upon the docket insofar as rates for sand and stone are concerned.

We hold therefore that the May 1961 order of the commission did not preclude the publication of tariff increases in 1968 as to stone, sand and other related commodities.

■ It is next argued by the appellees that the tariff increases published in July 1968 in Supplement 70 to become effective August 22, 1968, were cancelled by the publication on August 20, 1968, of Supplement 74 likewise scheduled to become effective August 22, 1968. Supplement 74 republished each and every rate contained in Supplement 70 except one. The one rate which was different in Supplement 74

increased the charge for 150-mile hauls from $1.50 to $1.60. The carriers claim that this was merely the correction of an error in Supplement 70 but they admit that it was published to become effective upon only two days' notice rather than the 30 days' notice required by KRS 276.160. KRS 276.160(2) provides a procedure for notice less than 30 days but this procedure was not utilized and therefore Supplement 74 never became effective.[1]

Although the rates published in Supplement 74 never became effective due to lack of notice, the appellees contend Supplement 74 did have the effect of cancelling the rates published in Supplement 70 and thus those rates never became effective either. If the rates published in Supplement 74 had become effective, those rates naturally would have superseded and cancelled the rates published in Supplement 70 but since we hold that the Supplement 74 rates were void and never became effective to change the rates, we think Supplement 74 had no effect for any purpose at all. Even though Supplement 74 contained the language that it cancelled Supplement 70 it seems clear that it was intended to do so only upon its taking effect.

■ It is the opinion of this court that the publication of Supplement 70 established new legal rates for the commodities included therein pursuant to KRS 276.160. A legal rate is the published rate which carriers are required to charge and it is not necessarily a lawful rate. The lawfulness of the new rates may yet be challenged and determined by the commission through procedures provided by statute upon complaint of shippers or upon the commission's own initiative.

The judgment is reversed with directions that a new judgment be entered in conformity with this opinion.

All concur.

1. The carriers did not contend that Supplement 74 became effective 30 days after its publication, i. e., on September 19, 1968, rather than August 22, 1968.