**PEOPLE OF the STATE OF CALIFORNIA et al., Plaintiffs,**

**v.**

**William E. SIMON, etc., et al., Defendants.**

**No. CV–74–661–JWC.**

United States District Court, C. D. California.

May 1, 1974.

Evelle J. Younger, Atty. Gen., Jay L. Shavelson, Asst. Atty. Gen., Warren J. Abbott, Deputy Atty. Gen., Richard A. Haft, Deputy Atty. Gen., for plaintiffs, State of California.

Leonard Putnam, City Atty., Harold A. Lingle, Robert W. Parkin, Deputy City Attys., for plaintiffs, City of Long Beach.

Dennis O'Neil, City Atty., David R. Baade, Deputy City Atty., for plaintiffs, City of Newport Beach.

Camp, Carmouche, Palmer, Carwile & Barsh, E. F. Barnett, Lake Charles, La., for plaintiff, State of Louisiana in Intervention.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., John E. Nordin, Asst. U. S. Attys., Los Angeles, Cal., Carla A. Hills, Asst. Atty. Gen., Stanley D. Rose, Acting Chief, Economc Stabilization Section, Bruce G. Forrest, Allen W. Hausman, Department of Justice, Washington, D. C., for defendants.

Ball, Hunt, Hart, Brown & Baerwitz, Long Beach, Cal., Ronald J. Del Guercio, Richard A. Del Guercio, and James R. Jurecka, Los Angeles, Cal., amici curiae.

## OPINION

CURTIS, District Judge.

In this action the plaintiffs, subsequently joined by the intervenor, are seeking to enjoin the administrator of the Federal Energy Office from putting into effect and enforcing an amendment to regulations adopted by the Federal Energy Office on February 21, 1974. This amendment purports to terminate retroactively state and local agencies' exemption from regulation in respect to prices charged for crude oil. A temporary restraining order having been heretofore issued, the matter now comes before this court on an application for a preliminary injunction. The parties, however, have agreed that this case may be submitted to the court for final judgment on all issues.

## FACTS

Under Phase IV of the regulations promulgated under the Economic Stabili-

zation Act of 1970 [1] state and local governments were exempt from price controls insofar as they relate to crude oil production.[2] On October 23, 1973, the Cost of Living Council, acting under the Economic Stabilization Act issued a Notice of Proposed Rule Making [3] proposing to amend Title 6 of the Code of Federal Regulations so as to terminate state and local exemption retroactively to the date of the notice. This notice specified that the ending date for comment on the proposed rule was November 24, 1973. The State of California and the City of Long Beach filed comments opposing said rule and the State sought a formal hearing. However, no further action was taken pursuant to this notice by the Cost of Living Council.

On November 27, 1973, the President approved the Emergency Petroleum Allocation Act of 1973,[4] which specifically required the President to promulgate and adopt new regulations relating to the mandatory allocation and pricing of crude oil. Pursuant to this authority conferred upon the President, he, by Executive Order,[5] created the Federal Energy Office and delegated to it the authority to issue regulations contemplated by the Petroleum Allocation Act of 1973.

On December 27, 1973, the Federal Energy Office adopted regulations which incorporated into Title 10 of the Code of Federal Regulations the pricing provisions (including the state and local exemption) previously set forth in Phase IV of the price regulations adopted by the Cost of Living Council.[6]

By regulations adopted January 14, 1974,[7] the Federal Energy Office made substantial changes in its regulations previously adopted December 27, 1973.

These changes included the adoption of 10 C.F.R. Part 212, which set forth in full pricing provisions applicable to crude oil and other petroleum products. Section 212.52(b) expressly stated that "Prices charged for any sale, lease or lease-sale of a covered product [including crude oil] by State and local governments are exempt." The summary preceding the January 14 regulations stated ". . . no specific future changes [in the regulations] are currently anticipated . . . ." [8]

On February 21, 1974, the Federal Energy Office, purporting to act pursuant to the Notice of Proposed Rule Making issued by the Cost of Living Council, revoked the state and local exemption, retroactive to October 25, 1973, the date of the notice.[9]

It is plaintiffs' position that the defendants may revoke the state and local exemptions only by issuing a new notice and the holding of such hearings as are contemplated by the regulations. Accordingly, they contend that the order of February 21, 1974, is a nullity and, in any event, cannot be applied retroactively. I agree.

The Federal Energy Office, once established, took what it wanted from the Cost of Living Council, republished regulations as its own which kept the exemption, and also stated that there was no present intention of changing the regulations. Those actions terminated the rule making proceedings begun by the October 25, 1973, notice.

█ If, following termination of the rule making proceedings under the October 25, 1973, notice, the Federal Energy Office desired to change the regulations,

1. Economic Stabilization Act of 1970, Pub.L. 91–379, 84 Stat. 799, as amended, 12 U.S.C. A. § 1904 note.

2. 6 C.F.R. § 150.54, 38 Fed.Reg. 21601 (1973).

3. The notice of proposed rule-making is at 38 Fed.Reg. 29618 (1973).

4. Pub.L. 93–159, 87 Stat. 627.

5. Executive Order 11748, 38 Fed.Reg. 33575 (1973).

6. Dec. 27 regs.: 39 Fed.Reg. 744 et seq. (1974).

7. Jan. 14 regs.: 39 Fed.Reg. 1924 et seq. (1974).

8. 39 Fed.Reg. 1924 (1974).

9. Feb. 21, 1974 regs.: 39 Fed.Reg. 7176 (1974).

it should have proceeded in accordance with § 553 of the Administrative Procedure Act (5 U.S.C. § 553) for this section is made expressly applicable to Federal Energy Office rule making by the Emergency Petroleum Allocation Act of 1973. In pertinent part this section requires that notice of proposed rule making shall be published in the Federal Register; that the required publication be made not less than 30 days before the effective date of a rule; and that after the notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written or oral data, views and arguments. The revocation of the state and local exemption on February 21, 1974, constituted rule making within the meaning of this section and cannot be upheld because of its obvious failure to comply with the administrative procedure requirements.

█ We come now to the question of whether the action of the Federal Energy Office of February 21, 1974, amending its regulations to eliminate the exemption, even if otherwise valid, can be given retroactive effect. I hold that it cannot.

Although an administrative agency in the course of its judicatory process may make a ruling which has a retroactive effect, the courts have been most reluctant to apply retroactively agency pronouncements made as a part of their rule making function. The courts in most instances have given only prospective application to such action. In this connection, the following discussion appears in Davis, Administrative Law Treatise, § 5.08 at 340–41 (1958):

Since legislative rules are merely the administrative counterpart of statutes, the argument is plausible that legislative rules may be retroactive whenever a statute may be retroactive, since the fairness or unfairness is the same and judicial ideas of fairness are decisive. But agencies have no powers except those conferred and power

to issue retroactive rules is not easily implied. State courts readily hold that retroactive rate orders are invalid for lack of statutory authority. And courts are less reluctant to upset mere administrative regulations than to upset statutes. Because retroactivity is not favored, a reasonable initial view is that retroactive rules should be tolerated only when specifically authorized by statute. [footnotes omitted]

In NLRB v. Majestic Weaving Co., 355 F.2d 854, 860 (2nd Cir., 1966) Judge Friendly, speaking on the issue of retroactivity, stated:

"There has been increasing expression of regret over the Board's failure to react more positively to the Supreme Court's rather pointed hint, SEC v. Chenery Corp., 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947), that since an administrative agency has 'the ability to make new law prospectively through the exercise of its rule-making powers, it has less reason [than a court] to rely upon *ad hoc* adjudication to formulate new standards of conduct', and that the 'function of filling in the interstices' of regulatory statutes 'should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future.' [Citations omitted]" [Footnotes omitted]

So, in Arizona Grocery Company v. AT&SF Ry. Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348 (1932), the Court rejected an attempt by the I.C.C. to apply a rate change retroactively. In Retail, Wholesale and Department Store Union, AFL–CIO v. N. L. R. B., 151 U.S.App. D.C. 209, 466 F.2d 380, 390 (1972), the court, denying retroactive force to a newly adopted administrative rule, stated:

" . . . and courts have not infrequently declined to enforce administrative orders when in their view the inequity of retroactive application has

not been counterbalanced by sufficiently significant statutory interests. [Citations omitted]"

The court, then, proposed certain guidelines which should be considered in determining if an administrative agency rule should be retroactively applied.

"Among the considerations that enter into a resolution of the problem are (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard." *Id.*

Applying these tests to the facts presented here (1) the February 21, 1974, amendment was not a matter of first impression, it was a change of a rule under which the parties had been acting and on which they had relied since its adoption by the Federal Energy Office. (2) It represents an abrupt departure from a well established practice, and does not merely attempt to fill a void in an unsettled area of law. (3) Each of the plaintiffs in this action has entered into contracts for the sale of crude oil involving millions of dollars in reliance upon the state and local governments' exemption. (4) Each of the plaintiffs has included in its budget revenue from the sale of crude oil at prices determined in reliance upon the exemption which revenue, presumably, has either been partially expended or committed. And (5) there is no strong compelling statutory interest in applying the new rule retroactively. The continuance of the exemption may well permit additional expenditures by the plaintiffs for increased oil production, which is one of the objectives of the Emergency Petroleum Allocation Act of 1973. Whatever statutory interests there may be, they do not counterbalance the inequity of retroactive application of FEO's amendment.

The application for preliminary and permanent injunction is hereby granted. Attorneys for the plaintiffs will prepare findings of fact, conclusions of law and judgment.