# Authority of the General Services Board of Contract Appeals to Order Reimbursement of the Permanent Judgment Fund for Awards of Bid Protest Costs

The General Services Board of Contract Appeals does not have the authority to order the Department of the Army to reimburse the permanent indefinite judgment fund for a Board award of bid protest costs under the Competition in Contracting Act.

May 29, 1990

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF THE ARMY

This memorandum responds to your office's request for the opinion of this Office on the authority of the General Services Board of Contract Appeals ("GSBCA" or the "Board") to order the Department of the Army ("Army") to reimburse the permanent indefinite judgment fund, 31 U.S.C. § 1304, for bid protest costs under the Competition in Contracting Act ("CICA"), Pub. L. No. 98-369, 98 Stat. 1175, 1182-84 (1984) (codified in relevant part at 40 U.S.C. § 759(f)(5)). *See* Letter to William P. Barr, Assistant Attorney General, Office of Legal Counsel, from Colonel William A. Aileo, Chief, Litigation Division, Office of the Judge Advocate General, United States Department of the Army (Jan. 30, 1990) (the "Army Letter"). We conclude that the Board does not have authority to order the Army to reimburse the judgment fund.

## I. Background

Your inquiry was prompted by two GSBCA cases, *Julie Research Laboratories, Inc.*, 1989-1 B.C.A (CCH) ¶ 21,213 at 107,020 (Sept. 23, 1988), *appeal dismissed, United States v. Julie Research Laboratories, Inc.*, 881 F.2d 1067 (Fed. Cir. 1989), and *Bedford Computer Corp.*, 1990-1 B.C.A (CCH) ¶ 22,377 (Oct. 13, 1989). In both these cases, the Board awarded bid protest costs against the Army under section 2713 of CICA, 40 U.S.C. § 759(f)(5).

The Army disputes the Board's conclusion in the *Julie Research Laboratories* and *Bedford Computer* cases. It maintains that the Board has exceeded its authority under 40 U.S.C. § 759(f)(6)(C) by requiring it to reimburse the

111

judgment fund. Moreover, components of the federal government other than the Army, including the Department of the Air Force, the National Transportation Safety Board, and the General Accounting Office, are interested in the resolution of the issue. *See* Army Letter at 1.[1]

Section 759(f)(5)(C) provides that, when the Board makes a determination that a challenged agency action violates a statute or regulation or the conditions of any delegation of procurement authority issued pursuant to the section, the Board

> may, in accordance with section 1304 of title 31, further declare an appropriate interested party to be entitled to the costs of—
>> (i) filing and pursuing the protest, including reason—
>>> able attorney's fees, and
>> (ii) bid and proposal preparation.

Section 759(f)(5)(C) explicitly requires that the Board's awards of bid protest costs be made "in accordance with" 31 U.S.C. § 1304, the Automatic Payment of Judgment Act. That act created the permanent judgment fund. Section 1304 thus appropriates necessary amounts to pay final judgments, awards, settlements, and interest and costs specified in the judgments when the following three conditions are satisfied:

> (1) payment is not otherwise provided for;
> (2) payment is certified by the Comptroller General; and
> (3) the judgment, award, or settlement is payable . . . under a decision of a board of contract appeals.

Despite section 759(f)(5)(C)'s express reference to payments from the judgment fund, the Board in both *Julie Research Laboratories* and *Bedford Computer* cases required the Army to reimburse the permanent judgment fund for the award, thus effectively requiring the Army to pay the costs from its procurement appropriation. In *Julie Research Laboratories*,[2] the Board supported its decision to require the Army to reimburse the judgment fund as follows:

---

[1] A recent Report to Congress from the General Accounting Office has said that "there has been some confusion in making administrative and policy decisions" as a result of disagreements over the requirements of the law, and has called for corrective legislation. General Accounting Office, *ADP Bid Protests*, Report to the Chairman, Subcommittee on Federal Services, Post Office, and Civil Service, Committee on Governmental Affairs, U.S. Senate, at 33 (March, 1990) (*"GAO Report"*).

[2] In *Julie Research Laboratories*, the Army's Missile Command had issued a solicitation for a multi-year procurement of automatic data processing equipment ("ADPE"). Julie Research Laboratories protested the solicitation and prevailed on a significant issue. It then applied for $25,754.88 in costs. The Board awarded it $20,986.13.

Because this monetary award is inextricably connected with the true economic cost of the procurement, it is appropriate that the fund be reimbursed by the agency whose appropriations were used for the contract out of available funds or by obtaining additional appropriations for such purposes. Such reimbursement is consistent with the purpose underlying 41 U.S.C. § 612 (1982), *see* S. Rep. No. 1118, 95th Cong., 2d Sess. 33 (1978), and with our responsibility to "accord due weight to the policies of [the Brooks Act, [Pub. L. No. 89-306, 79 Stat. 1127 (1965)]] and the goals of economic and efficient procurement . . . ." 40 U.S.C. § 759(h)(5)(A) (Supp. III 1985) (to be recodified at 40 U.S.C. § 759(f)(6)(C). . . . Accordingly, we revise the delegation of authority to require the agency to make the reimbursement. 40 U.S.C. § 759(h)(5)(B) (Supp. III 1985).

*Julie Research Labs., Inc.* at 89-1 B.C.A ¶ 21,213 at 107,021. Administrative Judge Borwick dissented in part. He stated:

[A]bsent a statutory requirement for reimbursement of the judgment fund in the Brooks Act, requiring agencies to reimburse the judgment fund is not appropriate. The majority relies on that portion of the Brooks Act which empowers the Board to order any additional relief which it is authorized to provide under statute or regulation. 40 U.S.C. § 759(h)(6)(C) (Supp. III 1985) (to be recodified at 40 U.S.C. § 759(f)(6)(C)). I do not believe that our broad authority to grant relief applies to this matter of fiscal and accounting policy which is purely a matter of statutory direction. There are sound policy reasons for the result reached by the majority as the reimbursement. However, if Congress had wished to adopt that policy, it would have specifically done so, as it did in the CDA [Contract Disputes Act, 41 U.S.C. §§ 609-613, Pub. L. No. 95-563, 92 Stat. 2388 (1978)]. As Congress has not, I would not revise the DPA [delegation of procurement authority] to require such reimbursement.

*Id.*

The Army then appealed this judgment to the Federal Circuit, which dismissed the appeal on the ground that the dispute was purely intragovernmental:

113

> [T]he government's obligation to pay Julie has been determined and Julie has received everything it could recover by receiving a decision on the merits in its favor which has not been appealed. A decision by this court of this intra-government dispute "cannot affect the rights of [the] litigants," *North Carolina v. Rice*, 404 U.S. [244,] at 246 [(1971)], and we must, therefore, conclude that the issue presented is not justiciable.

*United States v. Julie Research Labs., Inc.*, 881 F.2d 1067, 1068 (Fed. Cir. 1989).

In *Bedford Computer*, the Board, citing *Julie Research Laboratories*, also ordered the Army to reimburse the judgment fund in the amount of its award of costs.[3] *Bedford Computer*, 1990-1 B.C.A ¶ 22,377 at 112,434 (Oct. 13, 1989). Concurring separately in *Bedford Computer*, Administrative Judge Hendley agreed that the judgment fund should be reimbursed. He added that in future settlements of protest costs, the respondent agency should pay directly "in accordance with the Federal Acquisition Regulation (FAR)." *Id.* Judge Hendley wrote:

> So long as agency funds are available, to seek to have the payment made from the judgment fund and then reimburse that fund, is economically inane and constitutes a pointless exercise in unnecessary paper shuffling. That an agency should pay such costs directly, and not through the conduit of the judgment fund, is clearly directed by FAR 33.105(f) [48 C.F.R. § 33.105(f) (1988)] which states:
>
>> (f)(1) The GSBCA may declare an appropriate interested party to be entitled to the cost of —
>> (i) Filing and pursuing the protest, including reasonable attorney's fees; and
>> (ii) Bid and proposal preparation.
>> (2) Costs awarded under (f)(1) above shall be paid promptly by the agency out of funds available to or for the use of [4] the acquisition of supplies or services.

---

[3] In *Bedford Computer* the Army conceded that it had failed to comply with certain procurement statutes and regulations. The Army and the protester decided to settle the protest. The Board found that the protestor has prevailed on a significant issue, and awarded it $75,000 in protest costs.

[4] Perhaps should read: "or."

> Although the FAR is couched in terms of payment of costs awarded by the Board in a case where those costs were contested, it would be sheer sophistry to contend that in those instances where the parties have settled their dispute, those same costs, reflected in their settlement, should not be paid from the agency's funds as well.

*Id.* at 112,434-35.

## II. Analysis

We conclude that a Board award of costs under CICA is payable out of the judgment fund, and that the Board does not have the authority to order an agency to reimburse the judgment fund for having paid such an award.[5]

1. The only substantive question concerning the availability of the judgment fund to pay bid protest costs in the *Julie Research Laboratories* and *Bedford Computer* cases is whether the first of section 1304(a)(1)'s three conditions is met,[6] *i.e.*, whether payment of a Board award is "otherwise provided for" from some other appropriation. As a general rule, "agency appropriations are not available to pay judgments. Exceptions are recognized only where the appropriations or special funds for the activities out of which the cause of action arose expressly include provisions for the payment of judgments, or where other express provisions of law include such authority." *GAO Principles* at 12-3.

We are aware of no statutory authority — and none was cited in *Julie Research Laboratories* or *Bedford Computer* — that would require the Army either to pay Board awards of bid protest costs out of its own appropriations, or to reimburse the judgment fund for having paid such awards. There is no provision in either 40 U.S.C. § 759 or in 31 U.S.C. § 1304 which requires a procuring agency to reimburse the judgment fund when bid protest costs are

---

[5] This dispute between the Army and the Board, as the Federal Circuit held, is purely a disagreement within the Government and in no way affects the rights or remedies of parties (such as Julie Research Laboratories, Inc.) outside the executive branch. Consequently, as the court held, the dispute was not justiciable under Article III. *See United States v. Julie Research Labs., Inc.*, 881 F.2d at 1068. Because the dispute arises only between two components of the executive branch, this Office has jurisdiction to resolve it. *See* § 1-401 of Exec. Order No. 12146, 3 C.F.R. 409, 411 (1980), as amended by Exec. Order No. 12608, 3 C.F.R. 245 (1988) (Attorney General has authority to resolve interagency disputes). The Attorney General has delegated to this Office his authority to provide legal opinions and advice to the President and heads of the Executive and military departments. *See* 28 U.S.C. § 510 (Attorney General's authority to delegate); *id.* §§ 511-513 (duties of Attorney General); 28 C.F.R. § 0.25 (matters delegated to OLC); *see generally* Memorandum for Helen S. Lessin, Director, Federal Legal Council, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: OLC Policies Regarding Issuance and Release of Opinions* (Sept. 10, 1980).

[6] The second statutory requirement — the necessity for certification by the Comptroller General — imposes no substantive constraints on access to the judgment fund: the Comptroller General's certification follows from satisfaction of the other two requirements and completion of the necessary paperwork.

Continued

115

awarded against it.[7] We recognize that an award to a contractor by an agency board of contract appeals under the Contract Disputes Act ("CDA"), Pub. L. No. 95-563, 92 Stat. 2388 (1978) (codified at 41 U.S.C. §§ 609-613), when paid by the judgment fund, must thereafter be reimbursed by the procuring agency whose appropriations were used for the contract at issue. *See* 41 U.S.C. § 612(c). But CDA is inapplicable here because the awards at issue were not made under CDA, but under CICA, a wholly distinct enactment.[8] Hence, we conclude, Congress intended that Board awards of these bid protest costs be paid out of the judgment fund, rather than being statutorily subject to reimbursement.[9]

2. The remaining question is whether the Board exceeded its authority in ordering the Army to reimburse the judgment fund for having paid the awards. We conclude that the Board has exceeded its authority.

In *Julie Research Laboratories*, the Board majority relied on 40 U.S.C. § 759(f)(6)(C), which states:

> [N]othing contained in this subsection shall affect the board's power to order any additional relief which it is authorized to provide under any statute or regulation.

For two independent reasons, this provision does not, in our opinion, authorize the Board to require a procuring agency to reimburse the judgment fund for the payment of protest cost awards.

First, an order requiring the agency to reimburse the judgment fund would provide relief *at all* — still less *"additional* relief" — to the bid protester, since the protester's award has already been paid in full by the judgment fund. From the protester's point of view, it makes no difference whether the agency's procurement appropriation reimburses the judgment fund after the award is paid: the amount of the award is exactly the same. Thus, requiring that the amount of the award be taken from agency procurement appropriations

---

[6](....continued)

*See Availability of the Judgment Fund for the Payment of Judgments or Settlements in Suits Brought Against the Commodity Credit Corporation Under the Federal Tort Claims Act,* 13 Op. O.L.C. 362, 363-64 & n.1 (1989); *accord* General Accounting Office, *Principles of Federal Appropriations Law,* at 12-2 (1982) ("*GAO Principles*"). The third requirement -- that the award or settlement be payable "under a decision of a board of contract appeals" — is manifestly satisfied by awards issued by the Board.

[7] Section 1304(c) refers to a situation in which the judgment fund is available to pay a judgment or compromise settlement but must thereafter be reimbursed. The section is irrelevant here: it only concerns cases in which the judgment or settlement "arises out of an express or implied contract" made by the Army and Air Force Exchange Service, the Navy Exchanges, the Marine Corps Exchanges, the Coast Guard Exchanges, or the Exchange Councils of the National Aeronautics and Space Administration. *See* Pub. L. No. 91-350, 84 Stat. 449 (1970) (codified at 31 U.S.C. § 1304(c)).

[8] CICA, which gives the Board authority over ADPE protests, was not an amendment to CDA but to the Brooks Act, Pub. L. No. 89-306, 79 Stat. 1127 (1965) (codified at 40 U.S.C. § 759(f)). Hence the reimbursement requirement of section 612 of CDA does not apply to Board awards under the Brooks Act.

[9] This Office reached a similar conclusion in *Payment of Attorney Fee Awards Against the United States Under 28 U.S.C. § 2412(b),* 7 Op. O.L.C. 180 (1983)(judgment fund available by statute to pay fee awards). *Accord* 63 Comp. Gen. 260, 263-64 & n.3 (1984) (citing Rose Memo).

and transferred to the permanent judgment fund is purely a matter of accounting and fiscal policy, not a question of the scope of relief.[10] Hence, 40 U.S.C. § 759(f)(6)(C) cannot provide authority for the Board to order the Army to reimburse the judgment fund for the cost of the award.

Second, subsection 759(f)(6)(C) is not, as the *Julie Research Laboratories* majority mistakenly implied, itself an affirmative grant of authority to the Board. The subsection merely states that nothing in it shall affect the Board's power to order "additional relief" which the Board is *otherwise* empowered to provide. Thus, even on the assumption (which we have rejected) that requiring the procuring agency to reimburse the judgment fund could constitute "additional relief," the Board would still need to be "authorized to provide" such relief under some "statute or regulation" *other* than 40 U.S.C. § 759(f)(6)(C) itself.

No other statute provides the needed authority. In *Julie Research Laboratories*, 1989-1 B.C.A. ¶ 21,213 at 107,021 (Sept. 23, 1988), the Board majority stated only that ordering reimbursement was "consistent with the purpose underlying 41 U.S.C. § 612" and with the Board's responsibility under 40 U.S.C. § 759(f)(5)(A) to "accord due weight to the policies of [the Brooks Act] and the goals of economic and efficient procurement." However, neither 41 U.S.C. § 612 nor 40 U.S.C. § 759(f)(5)(A) authorizes the Board to order reimbursement of the judgment fund.[11]

We recognize that, in *Bedford Computer*, the concurring opinion cited a regulatory source of authority. *See id.*, 1990-1 B.C.A. ¶ 22,377 at 112,435 (Hendley, A.J., concurring separately). The cited regulation, FAR 33.105(f)(2), 48 C.F.R. § 33.105(f)(2) (1988), states that protest costs awarded by the Board "shall be paid promptly by the agency out of funds available to or for the use of the acquisition of supplies or services."

We understand,[12] however, that this Federal Acquisition Regulation was *not* intended to mandate that Board awards of bid protest costs under the Brooks Act be paid from agency procurement appropriations rather than

---

[10] It appears that the decision of the Board majority in *Julie Research Laboratories* relied on an understanding of sound accounting policy. It stated that "[b]ecause this monetary award is inextricably connected with the true economic cost of the procurement, it is appropriate that the [judgment] fund be reimbursed by the agency whose appropriations were used for the contract out of available funds or by obtaining additional appropriations for such purposes." *Id.*, 1989-1 B.C.A. ¶ 21,213 at 107,021. However, as the dissent correctly pointed out, "our broad authority to grant relief [does not] appl[y] to this matter of fiscal and accounting policy which is purely a matter of statutory direction." *Id.*

[11] As explained above, 41 U.S.C. § 612 provides that a monetary award to a contractor by an agency board of contract appeals in a *CDA* case must be reimbursed to the judgment fund. No comparable provision exists for *Brooks Act* cases. Rather, 40 U.S.C. § 759(f)(5)(C) merely states that the Board may hold a bid protestor to be entitled to protest costs to be paid "in accordance with section 1304," the judgment fund statute.

Section 759(f)(5)(A) instructs the Board to take account of the policy of the Brooks Act and of the goals of economic and efficient procurement when "making *a decision on the merits* of protests brought under this section" (emphasis added). That language does not authorize the Board to decide, *after* making its decision on the merits, whether payment for an award of protest costs is to come from the judgment fund or from agency appropriations.

[12] Per telephone conversation with Mr. Jack Miller, Deputy Associate General Counsel, GSA.

117

from the judgment fund.[13] (Apparently, the draftsmen of the regulation over-looked the fact that protests costs in CICA cases, unlike CDA cases, were to be paid out of the judgment fund.) If the regulation were read to require agencies to pay such costs without any recourse to the judgment fund, we would find it invalid. The plain language of both the judgment fund statute, 31 U.S.C. § 1304, and of the Brooks Act provision that refers to it, 40 U.S.C. § 759(f)(5)(C), compels the conclusion that Board awards of bid protest cases are payable only out of the judgment fund, not out of the agency's appropriation.[14] Insofar as a regulation conflicts with the express provisions of a statute, the regulation is without effect. *See, e.g., Dole v. United States Steelworkers of Am.*, 494 U.S. 26, 42 & n.10 (1990); *Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368 (1986); *Arizona Grocery Co. v. Atchison T. & S.F. Ry. Co.*, 284 U.S. 370, 387 (1932); 3 Op. O.L.C. 457, 459 (1979).

Accordingly, we conclude that the Board is not validly authorized by statute or by regulations to order reimbursement.

## III. Conclusion

The General Services Board of Contract Appeals lacks the authority to order the reimbursement of the judgment fund from a procuring agency's appropriation where the judgment fund has paid a Board award of bid protest costs against the agency in a case decided under 40 U.S.C. § 759.

JOHN O. McGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[13] Further, none of the three statutes — 40 U.S.C. § 486(c); 10 U.S.C. ch. 137; 42 U.S.C. § 2453(c) -- cited as authorities for the FAR regulation, *see* 50 Fed. Reg. 2270 (1985), expressly authorizes the General Services Administration to mandate, notwithstanding 40 U.S.C. § 759(f)(5)(C), that payment of GSBCA bid protest cost awards in Brooks Act cases be made directly from agency appropriations instead of from the judgment fund. Nor does any of those statutes allow the Board to order the judgment fund to be reimbursed from agency appropriations for having paid such awards.

[14] The GAO expressly agrees with the conclusion, observing that "while CICA requires that GSBCA payments be made from the Judgment Fund, the Federal Acquisition Regulation provides that these payments must be made from the agency's funds available for the acquisition of supplies or services. *The Federal Acquisition Regulation is inconsistent with CICA in this regard.*" *GAO Report* at 62 (emphasis added).