Slip Op. 05-158

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - ---x
                      :

GUANGZHOU MARIA YEE FURNISHINGS, :
LTD., *et al.*                 :       Before: Pogue, Judge
          Plaintiffs,   :

                      :       Court No. 05-00065

          v.         :

                      :

UNITED STATES,           :

          Defendant,   :

                      :

AMERICAN FURNITURE       :
MANUFACTURERS COMMITTEE FOR  :
FAIR TRADE, *et al.*       :

                      :

   Defendant-Intervenors.   :
- - - - - - - - - - - - - - - - - ---x

OPINION

[Department of Commerce's determination remanded.]

Dated: December 14, 2005

<u>Arent Fox Kintner Plotkin & Kahn, PLLC</u> (<u>Nancy A. Noonan</u> and <u>Patricia P. Yeh</u>) for  the Plaintiff;

<u>Peter D. Keisler</u>, Assistant Attorney General; <u>David M. Cohen</u>, Director, <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division U.S. Department of Justice (<u>Michael D. Panzera)</u>, Rachel Wenthold, International Attorney-Advisor, Of Counsel, Office of Chief Counsel for Import Amdinistration, Office of the General Commerce, U.S. Department of Commerce, for the Defendant;

<u>King & Spalding LLP</u> (<u>Joseph W. Dorn</u>, <u>Stephen A. Jones</u>, and <u>Jeffrey M. Telep</u>) for Defendant-Intervenor.

POGUE, Judge: This case involves a challenge by Guangzhou Maria

Yee Furnishings, Ltd., et.al. ("Maria Yee") to the Department of

Commerce's ("Commerce" or "Defendant") determination in <u>Wooden</u> <u>Bedroom Furniture from the People's Republic of China</u>, 69 Fed. Reg. 67,313, 67,317 (Dept. Commerce Nov. 17, 2004) (final determination of sales at less than fair value) ("<u>Final Determination</u>"). Plaintiff asserts that Commerce denied it separate rate status because Commerce improperly rejected as untimely evidence of Maria Yee's independence from the Chinese government's control.

In light of the court's decision in <u>Decca Hospitality Furnishings LLC, v. United States</u>, 29 CIT __, 391 F. Supp. 2d 1298 (2005) ("<u>Decca</u>"), and the principles examined therein, the court remands this case for further consideration consistent with this opinion.

## BACKGROUND

The procedural history of this matter is detailed in the court's decision in <u>Decca</u>. For ease of reference, the court summarizes the key facts here.

As in <u>Decca</u>, this case arises from the Department of Commerce's antidumping investigation of wooden bedroom furniture exporters/producers from the People's Republic of China ("PRC"). See <u>Wooden Bedroom Furniture from the People's Republic of China</u>, 68 Fed. Reg. 70,228, 70,228 (Dept. Commerce Dec. 17, 2003) (initiation of antidumping duty investigation) ("<u>Notice of Initiation</u>").

Because the PRC is a non-market economy ("NME"), in investigations of PRC exporters/producers, Commerce presumes that all companies operating in the PRC are state-controlled. Based on this presumption, in this investigation, Commerce applied the PRC antidumping rate of 198.08% to all companies that did not sufficiently demonstrate their independence from the Chinese government. Final Determination, 69 Fed. Reg. at 67,317. Those companies that were able to demonstrate both de facto and de jure independence from government control, Wooden Bedroom Furniture from the People's Republic of China, 69 Fed. Reg. 35,312, 35,319-20 (Dept. Commerce June 24, 2004) (notice of preliminary determination and postponement of final determination) ("Preliminary Determination") were assigned an antidumping margin of 6.65%. Wooden Bedroom Furniture from the People's Republic of China, 70 Fed. Reg. 329, 330 (Dept. Commerce Jan. 4, 2005)(notice of amended final determination of sales at less than fair value and antidumping duty order). Commerce evaluated a company's independence from government control on the basis of information timely submitted by companies in response to Commerce's Section A Questionnaire. Final Determination, 69 Fed. Reg at 67,315; Preliminary Determination, 69 Fed. Reg. at 35,319-20; Section A Questionnaire, P.R. Doc 297 at A-1 ("Section A Questionnaire"). Commerce solicited responses to its Section A Questionnaire by

sending the Section A Questionnaire to "mandatory respondents"[1] and

to the Chinese Ministry of Commerce ("MOFCOM") on February 2, 2004,

accompanied by a cover letter.  Letter from Robert Bolling, Program

Manager AD/CVD Enforcement III to Liu Danyang, Director Bureau of

Fair Trade for Imports and Exports, Pl.'s Exh. 12, P.R. Doc. No.

297; see also Decision Memorandum, P.R. Doc 1933 at 345. Pursuant

to 19 C.F.R. § 351.301(c)(2),[2] the February 2 letter established

February 23, 2004 as the deadline for responses to the Section A

---

[1]In large investigations, Commerce identifies certain
participants as those required to respond during the
investigation. 19 U.S.C. § 1677f-1(c)(2) (2000); 19 C.F.R. §
351.204(c) (2004), see also Department of Commerce Mem. from
Deputy Assistant Sec'y, Imp. Admin., to James J. Jochum,
Assistant Sec'y for Imp. Admin., Re: Issues and Decision
Memorandum for the Less-Than-Fair-Value Investigation of Wooden
Bedroom Furniture from the People's Republic of China (Dept.
Commerce Nov. 8, 2004), P.R. Doc 1933("Decision Memorandum") at
337; Final Determination, 69 Fed. Reg. at 67,313.

[2]Pursuant to 19 C.F.R. § 351.301(c)(2):

> (i) Notwithstanding paragraph (b)[see infra
> n.3] of this section, the Secretary may
> request any person to submit factual
> information at any time during a proceeding.
> (ii) In the Secretary's written request to an
> interested party for a response to a
> questionnaire or for other factual
> information, the Secretary will specify the
> following: the time limit for the response;
> the information to be provided; the form and
> manner in which the interested party must
> submit the information; and that failure to
> submit requested information in the requested
> form and manner by the date specified may
> result in use of the facts available under
> section 776 of the Act and § 351.308.

Questionnaire from "all parties" and the mandatory respondents. February 2 Letter, P.R. Doc. No. 297 at 2.

Like the plaintiff in Decca, Maria Yee was not selected as a mandatory respondent and asserts that it did not receive any requests for information from Commerce. Pl.'s Mem. Supp. Mot. J. Agency R. Pursuant to Rule 56.2 at 6 ("Pl. Br"); Pl. Reply Def.'s and Def. Int.'s Mem. Opp. Pl.'s Rule 56.2 Mot. J. Agency R. at 2; Decision Memorandum, P.R. Doc 1933 at 321. Because Maria Yee did not timely respond to the Section A Questionnaire, Commerce found that Maria Yee was state-controlled and therefore applied the PRC-wide antidumping rate of 198.08% to Maria Yee.

On June 24, 2004, the Department of Commerce published its Preliminary Determination and therein made explicit its reliance on responses to the Section A Questionnaire for the determination of separate rates for non-mandatory respondents. Preliminary Determination, 69 Fed. Reg. at 35,319-20. Maria Yee asserts that this was the first public statement by Commerce about the use of Section A Questionnaires for separate rate applications in this investigation. Pl. Br. at 15. After the publication of the Preliminary Determination, on July 2, 2004, Maria Yee filed its response to the Section A Questionnaire. Pl. Br. at 9; see also Maria Yee's Section A Response in Wooden Bedroom Furniture from the People's Republic of China, Letter from Jerome J. Zaucha & Nancy A. Noonan, Arent Fox, to Donald L. Evans, Sec'y of Commerce, Attn:

Imp. Admin, Int'l Trade Admin, <u>Re: Submission of Section A Response</u> <u>by Maria Yee in *Wooden Bedroom Furniture from the People's Republic* <u>*of China*</u> (July 2, 2004), Pl.'s Exh. 9.

Commerce rejected Maria Yee's Section A submission asserting that it was untimely because it was received after the February 23, 2004 deadline. <u>Decision Memorandum</u>, P.R. Doc. 1933 at 324. Commerce based its rejection of the information on the fact that its "consistent past practice has been to require companies to respond to the Department's Section A questionnaire, regardless of whether wholly owned by a market-economy entity." <u>Decision Memorandum</u>, P.R. Doc. 1933 at 337. Moreover, Commerce reasoned that its February 2, 2004 letter to MOFCOM and the mandatory respondents provided "sufficient notice and opportunity to respond to the Department's Section A questionnaire." <u>Id.</u> at 345.

Maria Yee contends that it is a Hong Kong-based producer of wooden bedroom furniture that is independent from the Chinese government, and further contends that it had no notice from Commerce of the Section A Questionnaire, or of any deadlines associated with the Questionnaire. Maria Yee brings this action under USCIT R. 56.2 seeking a restoration of its July 2, 2004 submissions to the record, and asking the court to order the Department of Commerce to grant Maria Yee the 6.65% separate rate.

Commerce asserts that Maria Yee was unknown to Commerce. Moreover, Commerce argues that Maria Yee was not entitled to rely

on or expect that Commerce would provide it with notice of the Section A filing deadline.  Rather, Commerce argues that because it did not have knowledge of Maria Yee's status as a producer of wooden bedroom furniture, it was appropriate for Commerce to provide notice by means of its letter to MOFCOM, as Commerce could not have provided personal service.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 28 U.S.C. § 1581(c).  The court must sustain Commerce's determination in an antidumping investigation unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B).

To act in accordance with law, an agency, may not refuse to recognize its own rules or regulations where it may prejudice a party.  Steen v. United States, 29 CIT __, Slip Op. 05-131 (Oct. 3, 2005) at 4-5 (citing Ariz. Grocery Co. v. Atchison, Topeka & Sante Fe Ry. Co., 284 U.S. 370, 389 (1932)); but cf. Kemira Fibres Oy v. United States 61 F. 3d 866, 875-76 (Fed. Cir. 1995) (as a general rule an agency is required to comply with its own regulations, however, if no prejudice is shown by such default, a plaintiff cannot benefit from failure to adhere to its own regulations, when Commerce has missed its own deadline).  At the

same time, an agency's interpretation of its governing statute is due deference, and must be upheld unless it is unreasonable. <u>United States v. Haggar Apparel Co</u>, 526 U.S. 380, 386-90 (1999) (discussing <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-43 (1984)).

Here, if Commerce, contrary to its own regulations, improperly rejected Maria Yee's submissions it thereby improperly presumed Maria Yee's place of incorporation (not to be Hong Kong), in which case Commerce's findings are unsupported by substantial evidence and the case must be remanded for Commerce to enter a factual finding. <u>Fl. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors . . . the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

## DISCUSSION

### A.

The timelines set out in Commerce's regulations provide a final deadline, as established by 19 C.F.R. § 351.301(b)(2)[3], and

---

[3]Section 351.301(b)(1) states that for a final determination in an antidumping investigation, submission of factual information is due no later than "seven days before the date on which the verification of any person is scheduled to commence." This provision establishes a deadline, in this matter, of July 6, 2004 (the verification process was due to commence on July 12th, and the 5th was a federal holiday).

a deadline for specific submissions, established by 19 C.F.R §

351.301(c)(2)(ii).  See n. 2 supra.  Commerce rejected Maria Yee's

information as untimely even though it was submitted before the

deadline established by § 351.301(b)(2),[4] claiming the controlling

deadline was established by § 351.301(c)(2)(ii).  Accordingly, to

sustain Commerce's determination the court must find that Commerce

properly invoked Section 351.301(c)(2)(ii).

Section 351.301(c)(2)(ii) provides the time limits and

deadlines for "[q]uestionnaire responses and other submissions on

request."  It states that in a written request "to an interested

party for a response to a questionnaire or for other factual

information" the Secretary will specify:

> the time limit for the response; the information to be
> provided; the form and manner in which the interested
> party must submit the information; and that failure to
> submit requested information in the requested manner by
> the date specified may result in use of the facts
> available under section 776 of the Tariff Act and §
> 351.308.

19 C.F.R. § 351.301(c)(2)(ii).

---

[4]Specifically, Commerce claims that § 351.301(b)(2) provides
time limits for the verification of information previously
submitted, and not for the submission of new information.  The
court, of course, defers to Commerce's reasonable interpretation
of its own regulations.  Koyo Seiko Co. v. United States, 36 F.3d
1565, 1570 (Fed. Cir. 1994). However, 301(b)(1) does provide a
definitive deadline and, by its terms, it is not specifically
limited to previously submitted information.  Additionally, the
section can be read so as to provide a deadline for which
Commerce can proceed to the verification of all information
provided previous to this deadline.

   The purpose of this regulation is to allow Commerce to obtain the information it needs in its antidumping investigations. 19 C.F.R. § 351.301(a). Commerce promulgated these regulations so as to clarify filing requirements and deadlines for parties because in the "past there ha[d] been some confusion over the deadline of submission of factual information." Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,331 (Dept. Commerce May 19, 1997)("Preamble"). Given that Commerce exercises considerable discretion in what information it seeks from interested parties to the investigation, and the timelines for their submissions, in instances of requiring additional information through the use of questionnaires, Commerce, through its regulation, provided for individual notice. 19 C.F.R. §351.301(c)(2)(ii); Decca, 391 F. Supp. 2 at 1316 ("Commerce has traded convenience for flexibility – it must take the bitter with the sweet in this trade-off." ). Additionally, Commerce, was well aware of the burden that such information gathering might place on smaller, less informed, foreign parties. See Preamble, 62 Fed. Reg. at 27,334 ("[S]ection 782(c)(2) of the Act provides that the Department will take into account difficulties experienced by interested parties, particularly small companies, in supplying information, and will provide any assistance that is practicable.").

   Commerce claims that when Maria Yee submitted information on

July 2, 2004, it missed the February 23, 2004 deadline for submitting information established by the MOFCOM letter pursuant to Section 351.301(c)(2)(ii). Accepting that the deadline is established by Section 351.301(c)(2)(ii), the inquiry becomes, did Commerce send acceptable notice "to" the parties as required by its own regulations?   19 C.F.R. § 351.301 (c)(2)(ii); see also Preamble, 62 Fed. Reg. at 27,333, ("Section 351.301)(c)(2)(ii) provides that the Department must give notice of certain requirements to each interested party from whom the Department requests information.")(emphasis added).

In Decca, this court held that where Commerce knows of a party's existence, Commerce may not rely on a "method of notice . . . not reasonably calculated to provide parties with actual notice of the filing requirements."  Decca, 391 F. Supp. 2d at 1310.  In Decca this holding was based on the regulation, 19 C.F.R. § 351.301, in which "Commerce has voluntarily assumed the obligation to send questionnaires to all parties."  Decca, 391 F. Supp. 2d. at 1316.

Maria Yee represents the next step of the analysis.  To what extent is Commerce obligated to provide notice to unknown parties as to information requirements and deadlines?  The court here finds that Commerce should have at least provided notice by publication.

Commerce claims that it could not give actual notice to an interested party of which it was unaware, and the court agrees that

to the extent the parties were not known to Commerce, Commerce is circumscribed in providing actual notice.[5]  Conceding this point, the question then becomes what form of notice would be reasonable and viable to apprise parties that they would need to fill out the Section A Questionnaire by February 23, 2004 in order to be considered for a separate rate?

**B.**

Commerce's main contention is that it provided notice through MOFCOM, and that providing notice to interested parties in such a

---

[5]The court does not address here the issue of which parties were known and which parties were unknown to Commerce and why. It appears from the record that Commerce knew of 211 producers of wooden bedroom furniture. Preliminary Determination, 69 Fed. Reg. at 35,313.  Commerce has not indicated how it came to know of these producers, and what procedures it follows in order to ascertain producers, other than sending a letter to MOFCOM.  If Maria Yee were "reasonably ascertainable," that is could be identified through "reasonably diligent efforts"  it might have been necessary to send Maria Yee "[n]otice by mail or other means as certain to ensure actual notice."  Tulsa Prof'l Collection Servs. v. Pope, 485 U.S. 478, 491 (1988) (quoting Mennonite Bd. of Missions v. Adams 462 U.S. 791, 798 n.4 & 800 (1983); but cf. Dusenbury v. United States,  534 U.S. 161 (2002)(providing notice by sending a certified letter to a prison inmate satisfied the requirements of notice, even though the inmate did not receive the notice).  Unknown parties, on the other hand, are those parties whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge . . . ."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 317 (1950); see also Chemetron Corp. v. Jones, 72 F. 3d 341,345-46 (3rd Cir. 1995); In re U.S.H. Corp of NY v. U.S. Home Corp., 223 B.R. 654, 659-60 (Bankr. S.D.N.Y. 1998).  As we do not know the extent to which Commerce searched for wooden bedroom furniture manufacturers in China, we are proceeding under the assumption that Maria Yee is properly classified as an unknown party.

manner was reasonable. Def.'s Mem. Opp. Pl.'s Rule 56.2 Mot. J. Agency R. at 19 ("Def. Br."). Commerce's argument, therefore, hinges on its claim that notice to MOFCOM was "reasonably calculated" to apprise unknown parties of the Section A filing requirement and the February 23 filing deadline applied here.[6]

Commerce's contention is both qualitative and quantitative. Commerce's quantitative contention is based on the number of completed Section A Questionnaire submissions received. Commerce's qualitative analysis is that MOFCOM is in the best position to know of and contact interested parties and therefore it is reasonable and preferable for Commerce to rely on MOFCOM to provide notice to the parties.[7] The court considers each argument in turn.

In its quantitative argument, Commerce attempts to show, by citing the number of responses to the Section A Questionnaire, that notice through MOFCOM was reasonably calculated to alert interested parties. Id. Commerce points to the fact that 120 producers of wooden bedroom furniture producers timely responded to the Section A Questionnaire, four of whom were parties unknown to Commerce, as supporting the reasonableness of this method of notice. Def. Suppl. Brief at 3-5. This court has addressed the fact that the

---

[6]For a more detailed consideration of this issue see Decca, 391 F. Supp. 2d at 1310-11.

[7]See Decca, 391 F. Supp. 2d at 1307-09 for a more detailed discussion of the unreasonableness of relying on MOFCOM to help parties rebut a presumption of state control.

number of responses is in no way indicative of the reasonableness of this method of notice. Decca, 391 F. Supp. 2d at 1310 n.17. However, Commerce continues to cite to raw numbers as a means of indicating the reasonableness of its method. Commerce has advanced no new support or arguments as to how sending MOFCOM a questionnaire, that included a statement of the deadline for submission, is a reasonably calculated means of providing notice to parties.

Neither Commerce nor the Defendant-Intervenors demonstrate that the number of responses is in any way related to the letter to MOFCOM, or that MOFCOM is in a better position to know of interested parties. If anything, Commerce has indicated that it received fewer responses by sending a Section A Questionnaire to MOFCOM, 126 including mandatory respondents, Final Determination, 69 Fed. Reg. at 35,313, than it did by sending the Quantity and Value ("Q & V") Questionnaire directly to the parties, 137, id. at 35,320. Moreover, the Section A Questionnaire was sent later in the investigation, the parties were provided with more time to answer the Section A Questionnaires than the Q & V Questionnaire, and the Section A Questionnaire was the questionnaire that was determinative of a party's eligibility for a separate rate. In sum, Commerce's numbers do not prove reasonableness.

Qualitatively, Commerce claims MOFCOM was in the best position to know of interested parties. The fundamental problem with this

method of claiming reasonableness is that even if MOFCOM is best situated for this task, MOFCOM was not required to forward the Questionnaires to the parties; indeed Commerce did not even request MOFCOM to forward the Section A Questionnaire to third parties, February 2 Letter, P.R. Doc. No. 297; Decca, 391 F. Supp. 2d at 1311. To rely on a government instrumentality to forward a letter in order to provide notice, when this instrumentality is under no obligation to do so, is in contravention of settled case law. See Wuchter v. Pizzutti 276 U.S. 13, 24-25 (1928) (a statute designating the Secretary of State as the person to receive process must contain a provision that makes it reasonably probable that the service be communicated to the party to be sued); Koster v. Automark Indus., Inc., 640 F. 2d 77, 81 n. 3 (7th Cir. 1981) ("a statutory provision is not reasonably calculated to provide notice unless its terms relating to the sending of notice are mandatory."); Howard v. Jenny's Country Kitchen, Inc., 223 F.R.D. 559, 564-66 (D. Kan. 2004) (service not proper when made on the Kansas Secretary of State who mailed summons to the wrong place).

Contrary to Commerce's assertions that MOFCOM is better placed to ascertain interested parties and their addresses, Commerce has not demonstrated that MOFCOM is an appropriate partner in notifying parties. Indeed, Commerce's own experience has been that MOFCOM does not respond to Commerce's inquiries. See Preliminary Determination, 69 Fed. Reg at 35,321 (noting the failure of the

Government of the PRC to respond to the Section A Questionnaire). In the Preliminary Results in Certain Cased Pencils, the PRC Ministry of Foreign Trade and Economic Cooperation ("MOFTEC"), the predecessor to MOFCOM, did not respond to requests from Commerce requesting that MOFTEC forward questionnaires to unlocatable parties. Finally, the China Chamber of Commerce for Import & Export of Light Industrial Products and Arts-Crafts responded stating that it managed to forward the questionnaire to only two of the seventeen parties for which Commerce did not have a correct address. Certain Cased Pencils From the People's Republic of China, 67 Fed. Reg. 2402, 2403 n.1 (Dept. Commerce Jan. 17, 2002) (preliminary results and recission in part of antidumping duty administrative review). (Commerce ultimately never received responses from any of the seventeen parties for which it solicited aid from MOFTEC. Id.)

That Commerce's approach was not reasonable is underscored here by an entirely feasible and customary alternative: notice by publication in the Federal Register. Mullane, 339 U.S. at 315 (stating that reasonableness of the form of notice chosen may be defended if the "form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes."); Goldhofer Fahrzeugwerk GmbH & Co. v. United States, 885 F. 2d 858, 861 (Fed. Cir. 1989)( "the reasonableness of the notice provided must be tested with reference to the existence

of feasible and customary alternatives and supplements to the form of notice chosen.") (quoting <u>Greene v. Lindsey</u>, 456 U.S. 444, 454) (1982)(internal citations omitted).

It is well-established that the "Federal Register is a publication in which the public can find the details of the administrative operations of Federal agencies." H. R. Rep. No. 89-1497 (1966) reprinted in 1966 U.S.C.C.A.N. 2418, 2424 (1966) (discussing the Freedom of Information Act).[8] Moreover, that notice by publication is a feasible and customary substitute for unknown parties is uncontroverted. See <u>Mullane</u> 339 U.S. at 317 (notice by publication to unknown parties is sufficient); <u>Tulsa</u>, 485 U.S. 478, 490 ("For creditors who are not 'reasonably ascertainable' publication notice can suffice."); <u>Rodway v. U. S. Dep't of Agric.</u>, 514 F. 2d 809, 815 (D.C. Cir. 1975) ("Absent actual notice, the public should be held accountable only for notice plainly set forth in the *Federal Register*."); <u>Chemetron</u>, 72 F. 3d 341 (notice by publication sufficient for unknown parties); <u>Friedman v. N.Y. City Dep't of Hous. and Dev. Admin.</u>, 688 F. Supp.

---

[8]The report continues "[t]hey would be able to find out where and by whom decisions are made in each Federal agency and how to make submittals or requests." The legislative history makes clear that the Act seeks to provide "incentive for agencies to publish "the necessary details about their official activities in the Federal Register" through the "provision that no person shall be 'adversely affected' by material required to be published – or incorporated by reference – in the Federal Register but not so published." H. R. Rep. No. 89-1497, 1966 U.S.C.C.A.N. at 2424 (1966).

897, 901 (S.D.N.Y. 1988) ("As notice by publication, the usual form of constructive notice was not undertaken in this case, the court must consider whether the individual plaintiffs were constructively notified in any other suitable manner."); In re U.S.H. Corp., 223 B.R. at 6660 (unknown creditors, who would have only been found by conjecture, received constructive notice through publication).

In the case at bar, Commerce's attempt to provide notice through MOFCOM is not one that is supported by reliability, obligation, regulation, or statute. Particularly in comparison to a more traditional form of providing notice, notice by publication, Commerce's method of providing notice here was not reasonable.

### D.

Commerce and Defendant-Intervenors state that after being put on notice of the investigation, Maria Yee had a duty to inquire as to the further steps, if any, they were required to take. Commerce's argument essentially rests on the proposition that all forms of constructive notice are equal; therefore, so long as notice to MOFCOM was "constructive notice," Commerce's method of notice was proper.

The problem with this view is that it is in contradiction to the announced regulation. Commerce does not point to any publication where it announces that parties interested in being evaluated for a separate rate need to inquire of either MOFCOM or the Department of Commerce, or search on the internet for

additional forms and deadlines.  Nor does Commerce assert that the form of notice provided was in accordance with its own regulations.  Rather, Commerce asks the court to read a regulation that states affirmatively that Commerce will contact parties directly, as one that somehow puts parties on notice that they are required to contact Commerce or the Chinese Government to determine the steps they are required to take.  Commerce's request is not reasonable.

As directed by the Notice of Initiation, the parties looked to the announced policy and regulations of the Commerce Department, in order to ascertain how Commerce would be conducting the investigation and the time limits that would be employed.  Notice of Initiation, 68 Fed. Reg. at 70,229, 70,231.  As noted previously, the regulations state that when additional information is needed from the parties, Commerce will send a written request to the parties. 19 C.F.R. § 351.301(c)(2)(ii); Preamble, 62 Fed. Reg. at 27,333.  The regulations do not make parties aware that they need to contact other bodies, or search the internet, in order to ascertain what additional material is required of them.

Commerce also argues that Maria Yee had actual notice of the deadline for the Section A Questionnaire, as Annex III of 19 C.F.R pt. 351 provides that "the general deadline for Section A of the questionnaire in investigations is 51 days after initiation, . . . and further indicates that all parts of the questionnaire need to be completed prior to Commerce's preliminary determination." Def.

Br. at 27. Annex III, in the form of a table, does state the general deadline for the submission of the Section A Questionnaire is 51 days after the <u>Notice of Initiation</u>. 19 C.F.R. pt. 351, Annex III; <u>see</u> <u>also</u> <u>Decca</u> 391 F. Supp. 2d at 1306 n. 13. However, this information cannot constitute notice to the parties of the need to fill out a Section A Questionnaire. A party would only become aware of the applicability of the general deadline, were they put on notice of the need to fill out the Section A Questionnaire. Commerce cannot claim that its prior practice or decisions provide such notice. <u>See</u> <u>Decca</u>, 391 F. Supp. 2d at 1311-14. Moreover, footnote 1 to Annex III indicates the discretionary nature of these deadlines by emphasizing that the deadlines are approximate, and can be established by the Secretary. 19 C.F.R. pt. 351, Annex III. This underscores the point that notice of the applicable deadlines was to be provided by reliance on §351.301(c)(2)(ii) through written request by the Secretary to interested parties.

Commerce also argues that Maria Yee had actual notice of the Section A Questionnaire because Maria Yee obtained the Respondent Selection Memorandum. Commerce's claim is, at least, uncertain as the Respondent Selection Memorandum does not provide any notice as to the requirement for non-mandatory respondents to submit Section A Questionnaires, nor of a deadline for filing; but, even more importantly, this is a question of fact which Commerce has not

found.   Therefore, this court may not find it for them.   If Commerce wishes to argue that Maria Yee had actual notice of the Section A Questionnaire and its attendant deadlines through the Respondent Selection Memorandum, it must make a factual determination that Maria Yee received this Memorandum prior to the February 23, 2004 deadline.

As noted in <u>Decca</u>, the court understands the difficulties that Commerce faces in identifying multiple parties in China, and sending direct notification to their addresses.   <u>Decca</u>, 391 F. Supp. 2d at 1316.   However, as Commerce has itself assumed a duty of providing notice to parties, 19 C.F.R § 351.301(c)(2), <u>Preamble</u>, 62 Fed. Reg. at 27,333, Commerce's means of providing notice must be "reasonably calculated" to provide notice and more than that of a "mere gesture," <u>Mullane</u>, 399 U.S. at 315, and cannot be relying on "chance alone" to reach the interested party, <u>Goldhofer</u>, 885 F. 2d at 861.


**CONCLUSION**

For the foregoing reasons the court remands this case to Commerce for reconsideration consistent with this decision. Commerce's remand determination shall be filed by January 30, 2006, and Parties' comments due by February 13, 2006.  Rebuttal comments shall be filed by February 27, 2006.

IT IS SO ORDERED.


                                              /s/ Donald. C. Pogue
                                              Donald C. Pogue
                                                    Judge


Dated:      December 14, 2005
            New York, New York